# Laning's Estate.

*Wills—Construction—Advancements—Evidence—O. C.—Findings of fact.*

1. Testator by will provided: "I desire that four thousand dollars of the money advanced by me for my son Augustus shall not be deducted from his share of my estate." It appeared that the testator had made certain payments directly to his son Augustus in his lifetime, and that he had made certain other payments to third persons for his son. *Held,* the language of the will above quoted should not be construed to mean that payments made directly to the son, as distinguished from others made to third persons for his benefit, were intended by the testator to be excluded in computing advancements chargeable against the son's share of the estate.

2. In such case it appeared that testator had paid certain sums to his son prior to his marriage, while the son was living with him in his household, and had paid him certain other sums after his marriage, and while he was engaged in business for himself. It was held to be a fair presumption that payments of the first class were intended as gifts, and of the second class as advancements.

3. In such case, it was error for the Orphans' Court to charge the son with an advancement, where the evidence showed the payment was a loan to a firm, and there was nothing to show that the testator intended it to be charged as an advancement against his son. It was also error to charge the son with the value of a lot conveyed to him, and with the amount of a check paid to him prior to his marriage, where the circumstances indicated that both were intended as gifts, and there was no evidence that testator intended either of them to be charged against the son as advancements.

4. In such case, the check stubs of the testator's check book, upon which he had made memoranda of dates, amounts and purposes for which the checks were issued, were properly introduced in evidence, for the purpose of showing the intention with which the payments were made. While check stubs of this kind would properly be considered as self-serving declarations, and not admissible in evidence in an ordinary contract case, they are admissible in determining the intent with which payments are made by a testator, where he is acting under no compulsion, but as a benefactor for a child.

Argued April 14, 1913.   Appeal, No. 49, Jan. T., 1913, by Augustus C. Laning, from decree of O. C. Luzerne Co., No. 515, of 1909, dismissing exceptions to report of audit in Estate of John Laning.  Before Brown, Mestrezat, Potter, Elkin and Moschzisker, JJ.  Reversed.

Audit of executor's first and final account.   Before Freas, P. J.

The opinion of the Supreme Court states the facts.

Exceptions to the report of audit were dismissed and the account confirmed.

*Error assigned* was in dismissing the exceptions.

*W. Alfred Valentine,* for appellant.

*Edwin Shortz, Jr.,* with him *Frank T. McCormick,* for appellees.

Opinion by Mr. Justice Elkin, May 12, 1913:

It is conceded by appellant that certain payments made by his father for his benefit should be charged as advancements to be deducted from his share of the estate, but it is denied that moneys advanced to him personally from time to time should be so charged. After making a specific devise to his daughter the testator directed the remainder of his estate to be divided equally between his three children; appellant being a son.  This is followed by the clause which relates to advancements: "I desire that Four Thousand Dollars of the money advanced by me for my son Augustus shall not be deducted from his share of my estate." It is argued that money advanced for Augustus is not the same thing as money advanced to him, and that the testator only intended such payments as he made to other parties on account of his son to be charged as advancements.  This argument is plausible but we cannot agree

that the language used by the testator should be given such a restricted meaning. The testator evidently wrote his own will and did not make use of technical words. He wrote as a plain business man without attempting exact legal phraseology or precise etymological meaning. In interpreting his language this thought must be kept in mind. There does not seem to be any reason why the testator should regard money advanced to Augustus in person upon a different basis than money advanced for his benefit but paid to others. No facts are disclosed by the record upon which such a distinction can be properly based. We must, therefore, conclude that the testator did not intend to restrict charges against Augustus by way of advancements to payments made to third parties for his benefit, but that he intended to include in the phrase "money advanced by me for my son" all moneys so advanced without reference to whether payments were made "to him" or "for him." But even with this question decided the case is not free from difficulty. The will does not in express terms declare "money advanced" to or for Augustus to be an advancement. The intention of the testator insofar as the same may be derived from the will appears by the negative provision that four thousand dollars of the money advanced for Augustus shall not be deducted from his share of the estate. This was clearly intended as a benefit to Augustus, but the plain implication is that advancements in excess of the amount to be deducted had been made by testator. The provision allowing this deduction has no meaning unless the advancements exceeded that amount. In view of the direction in the will relating to advancements, the sums of money given by the father to the son after his marriage and when he was engaged in business on his own account, and the admission by Augustus that it was the intention of his father to charge moneys paid "for him" as advancements, we agree with the conclusion of the learned judge of the Orphans' Court that advancements so made

should be charged against the share of appellant under the will of the testator. It is argued, and the argument has much force, that the evidence was insufficient to sustain the findings in the adjudication as to many of the items included in the total amount of the advancements to appellant. In this connection it is contended that the check stubs upon which the testator made memoranda of dates, amounts and purposes for which some of the checks issued, were not properly admissible in evidence. The contention is that entries by the testator on the stubs of his check books were in the nature of self-serving declarations of which appellant had no notice and, therefore, without binding effect upon him. It is pointed out that an indebtedness to the drawer of checks cannot be established by stub entries in the check book alone, and that check stubs with their memoranda cannot be regarded as books of original entry. To sustain these propositions the following cases are cited: Mathias Planing Mill Co. v. Hazen, 20 Ohio Cir. Ct. Rep. 287; Simons v. Steele, 82 N. Y. App. Div. 202; Reddelien v. Atkinson, 46 Pa. Superior Ct. 159. These cases do not support the contention of appellant as applied to the facts of the case at bar. We can very well understand how entries of this character might be considered in the nature of self-serving declarations in a controversy between the party who made such entries, or his estate, and a person who denied such indebtedness and refused payment on the ground that he never incurred such liability. In such a case the burden would be on the party suing to establish the indebtedness upon which he claims the right to recover, and the party defending against the action would not be bound by private memoranda made by the claimant and of which the adverse party had no knowledge or notice. Even in such cases there are instances in which memoranda of this character may be admitted to supplement direct testimony relating to the matter in controversy. But in the adjudication by the Orphans' Court in the

case at bar a very different situation was presented. The parties here are not standing upon contractual rights, nor is this an action founded in contract. The testator was acting as a benefactor and was under no compulsion to advance money for his son, or to give him a share of his estate. Appellant stands in the position of a beneficiary and cannot dictate the terms upon which the bounty was bestowed. The father could give the son much or little, and in the giving could treat money advanced in his lifetime as a gift, or loan, or advancement. This was a matter of volition on the part of the testator and the legatee must be regarded as a volunteer entitled to take only upon the terms specified in the will: Eichelberger's Est., 135 Pa. 160. It appearing in the will that the testator intended at least some of the money advanced to his son to be charged against his share of the estate, and this intention being manifested by other facts and circumstances in the case, the checks and check stubs were admissible in evidence to show dates when paid, amounts advanced and purposes for which given. It is argued that most of the check stubs did not show the purpose for which the payment was made and this is true. Many of the checks and check stubs standing alone would be insufficient to show that an advancement was intended, but when considered in connection with the will and other circumstances in the case, the fair presumption is that money advanced to Augustus after his marriage when he was maintaining his own household and transacting his own business was intended to be charged against his share of the estate. On the other hand, we can find nothing in the case to indicate that money paid to or on account of Augustus prior to his marriage and while he remained at home with his father was so intended. The presumption that moneys paid to or on account of Augustus after his marriage were intended as advancements, cannot prevail in those instances where the testator clearly indicated a different purpose at the time

of the transaction, when there was nothing in the will to show that the original purpose was subsequently changed so as to include such items in the charges to be made against the share of the estate given Augustus. The learned auditing judge included several of these items in the charges to be made against the share of Augustus on the ground that they were intended as advancements to him. After a careful examination of the record we have concluded that the evidence was not sufficient to sustain the findings as to the items about which complaint is made in the fourth, fifth, sixth and ninth assignments of error. The item mentioned in the fourth assignment was a loan to the firm of Jackson and Laning and was so marked on the check stub. This was a loan to a partnership and there is not a particle of evidence to show that the testator intended this loan to a firm to be charged as an advancement against Augustus. The same is true as to the item about which complaint is made in the fifth assignment. The appellant was also charged with the value of a certain lot which the father in his lifetime conveyed to his son for a nominal consideration. There is no evidence to show that this was intended as an advancement. The circumstances would seem to indicate that it was intended as a gift. Appellant is also charged with a check made payable to him and dated January 12, 1892. This was before the marriage of Augustus and during the time he was at home as a member of the household of his father. The auditing judge excluded all other items of this kind during the time Augustus remained at home just as he refused to charge the other two children for money advanced while they remained at home. We can see no reason why this item should be treated on a different basis. Certainly there is nothing in the evidence upon which to base such a distinction.

We cannot agree with learned counsel for appellant that there was error in charging Augustus with the items mentioned in the seventh and eighth assignments.

The evidence shows that these amounts were paid for the direct benefit of Augustus and there is nothing to indicate a loan or gift. It is difficult for courts to work out with mathematical precision problems of the kind here presented when the testator failed to enumerate what items should be charged as advancements and what should not be so charged. But from a consideration of the whole record we have concluded that the fourth, fifth, sixth and ninth assignments of error should be sustained. The remaining assignments of error are overruled except as it may be necessary to modify the awards so that proper distribution may be made when appellant is relieved from the charges contained in the items mentioned in the assignments of error which we have sustained.

Decree reversed and record remitted with directions to make distribution in accordance with the views expressed in this opinion. Costs to be paid out of the estate.