## Sears's Estate.

Argued December 7, 1933.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John Harper,* for appellants.

*W. Logan MacCoy,* of *MacCoy, Evans, Hutchinson & Lewis,* with him *Paul Freeman,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 2, 1934:

This case relates to presumptions and burden of proof. On December 2, 1924, M. S. Sears, since deceased, executed a written contract under seal agreeing with his wife, from whom he was then separated and soon afterwards divorced, that he would pay her monthly the sum of $80 "toward the support" of their child.  He married another woman about twenty months later and died about six years after the execution of the contract of support.  After his death the child's mother, the obligee in the contract, presented a claim for $4,482.70 arising under that contract.

Sears's executors objected to the claim on chiefly these grounds: (a) There was a presumption of payment. (b) The contract had been modified. (c) It had been breached. (d) The consideration had failed.

Appellant contends that the claim made and allowed in this case is in the same class as claims for servants' wages or for nursing or for board, as to which claims there is a presumption of payment and the burden of proof is on him who asserts the contrary. In Cummiskey's Estate, 224 Pa. 509, 73 A. 916, this court said: "It is the habit and usage of people to pay their board bills as well as for services for nursing at stated periods. This is so well understood in this country that, as in the case of servants' wages, a presumption arises that they are periodically paid. Especially does this rule obtain where a claim for boarding and nursing for years is presented against the estate of a decedent." In Cambria Iron Co. v. Tomb et al., 48 Pa. 387, 391, this court said in an opinion by Mr. Justice AGNEW: "Legal presumptions are founded upon experience and common observation. When a connection is found to exist between things, so that when one occurs the other is known always or generally to follow, this connection becomes the foundation of a legal presumption of the existence of the latter from the proof of the former. These presumptions are conclusive when the connection appears to be constant or universal, and prima facie when the connection is general, but not so universal as to establish a conclusive certainty: 1 Greenleaf's Ev., sections 14-33."

In U. S. v. Searcey (U. S.), 26 Fed. 435, 437, appears this statement: "A presumption is a probable inference which common sense, enlightened by human knowledge and experience, draws from the connection, relation, and coincidence of facts and circumstances with each other. When a fact shown in evidence necessarily accompanies the fact in issue, it gives rise to a strong presumption as to the existence of the fact to be proved." In the

present case "common sense enlightened by human knowledge" does not tell us that when a man separated from his wife and about to divorce her and marry another woman, agrees to support his offspring by the marriage about to be dissolved, that fact is necessarily or even customarily followed by the fact that the agreement is scrupulously kept. Even if the obligor in such an agreement fully intends to discharge the obligation incurred, his financial circumstance sometimes so changes (as the testimony shows it changed here) that fulfillment of the obligation becomes impossible or at least impracticable. The difference in the presumption attendant upon a claim based on such an agreement and the presumption attendant upon a claim for board or nursing or servants' labor is so obvious as to require little or no discussion. It is a presumption or probable inference drawn from circumstances usually occurring in such later cases that the discontinuance of boarding, nursing or serving would quickly follow the unreasonable continuance of the debt due for them. This follows almost of necessity, for most persons would be unable to furnish board, nursing and menial service unless the obligation for the same was promptly liquidated. No such inference follows from the facts here. The child was with the mother and would, of course, be fed and clothed by the mother (who also soon remarried after she and the child's father were divorced) whether or not the father kept up the monthly payments promised.

The burden was upon the executors to prove that the payments had been made by decedent as agreed. The executors were allowed credit for every payment shown by the stubs of decedent's check books. This gave to the stubs, as Judge GEST of the court below said in his opinion, "the fullest force to which they might be entitled" (citing Laning's Estate, 241 Pa. 98, 88 A. 289, and Hanna's Estate, 81 Pa. Superior Ct., 159). The executors were not entitled to any presumption of payments by the decedent by reason of the fact that dece-

dent's check book stubs were missing for the period between February 1926 and October 1927. Nor does the fact that claimant's letters of August 16, 1926, August 30, 1926, and December 14, 1926, acknowledge receipt of checks and these letters were written during some of the period for which decedent's check stubs are missing, prove that the amounts due during that period were fully paid, nor does this fact even disturb the preponderance of proof offered by claimant that the payments due from decedent were in arrears during his lifetime. The claim based on a simple mathematical calculation whose factors were furnished by the contract and the calendar was confronted only by the check book stubs received in evidence and these meet the burden of proof of payment only to the extent of $1,277.30, leaving the net amount due, $4,482.70, as the court below correctly found.

As to the alleged modification of the contract, the evidence of this was so equivocal as to fall far short of the proof required to support the allegation.

The evidence of claimant's alleged breach of the contract is that though she had in the agreement covenanted to reside in Philadelphia or suburbs and not to remove with the child permanently without the father's consent, yet she and her second husband spent one winter in Mexico where her then husband was engaged in the oil business. But it was also in evidence that the father was notified of this proposed Mexican sojourn and was given the opportunity to have the child in his exclusive custody and subject to be supported entirely by him while the mother was in Mexico. His subsequent actions and remarks indicated that he consented to the child's going to Mexico with its mother.

As to the contention that the consideration failed because of the second marriage of the child's mother and the fact that her second husband had assumed the status of a supporting father toward this child, we agree with

Judge GEST of the court below that this did not have the slightest effect on the father's formal obligation.

Judge HENDERSON in his adjudication in this case aptly said (quoting from his opinion in an earlier case) : "It will be observed that the instrument is a formal one under seal, and as such it is not merely evidence of the obligation, it is the obligation itself. Williston on Contracts, section 205, page 412, who quotes Mr. Justice HOLMES in U. S. & C. Co. v. Riefler, 239 U. S. 17, who speaks of a bond 'carrying, as a specialty does, its complete obligation with the paper......The existence of the instrument in proper form necessarily involves the continued existence of the obligation.' "

The obligation to pay having continued, the burden of proving payment rested on the executors and this burden they were unable to sustain, except as to the amount found by the adjudication.

The decree is affirmed at appellant's cost.