Sigel *v.* American Guarantee and Liability Insurance Company, Appellant.

Argued March 23, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*Arthur B. Walsh, Jr.,* with him *Frank R. Ambler,* for appellant.

*Eugene H. Feldman,* for appellees.

OPINION BY RENO, J., July 14, 1953:

Plaintiffs sued defendant upon its residence and outside theft insurance policy. The jury returned a verdict for defendant and the court below awarded a new trial, concluding that the charge may have misled the jury. Defendant appealed.

The policy insured plaintiffs against theft of certain personal property, including jewelry, and provided inter alia: "The word 'theft' includes larceny, burglary and robbery. Mysterious disappearance of any insured property, except a precious or semiprecious stone from its setting in any watch or piece of jewelry, shall be presumed to be due to theft."

On February 22, 1950, while the policy was in force, plaintiff-husband received a diamond ring and a wrist watch from a Philadelphia jeweler who had

repaired them. The ring belonged to his wife; the wrist watch to his sister-in-law. The two articles were wrapped separately in tissue paper and placed in a small jeweler's envelope with the flap left open. The husband put the envelope in his right trousers pocket, and that evening played handball with his brother-in-law at a health club. After the game, he recovered the ring from the club's safe deposit box and showed it to his brother-in-law. He re-wrapped the ring in the tissue paper, replaced it with the watch in the envelope and put the envelope, unsealed, in his trousers pocket. After resting for a few minutes, they dined at a restaurant, and the brother-in-law drove plaintiff-husband home. He placed the envelope on the bureau in his bedroom without opening it. The next morning, after he had gone to work, his wife found the envelope; it contained the wrist watch but the ring was missing; and a thorough search of the premises failed to disclose the ring.

There was no evidence that the house had been entered during the night or that any one within the house had misappropriated the ring, and plaintiffs relied upon the presumption arising from the "mysterious disappearance of any insured article." Defendant offered no evidence.

After defining a technical theft, to which further reference will be made, the learned trial judge turned to the clause creating a presumption of theft, and charged: "Now, that clause means exactly what it says: In other words, if you find that there was a mysterious disappearance of this ring then there is a presumption that that mysterious disappearance occurred by reason of theft. However, it is a presumption, and this presumption like all presumptions is rebuttable by countervailing evidence, be that evidence offered by either the plaintiff or the defendant. So it is for you to deter-

mine first whether there was a mysterious disappearance. If you find there was a mysterious disappearance you may then presume that that disappearance was occasioned by the theft of that ring. If you find that there was no mysterious disappearance of this property then there is not sufficient evidence on which you could make a finding of theft. If you find that there was a mysterious disappearance then you may presume that that mysterious disappearance was caused by theft, unless you find after a consideration of all the evidence that there was no theft."

His definition of a mysterious disappearance followed: "A mysterious disappearance is any disappearance or loss under unknown, puzzling or baffling circumstances which arouses wonder, curiosity or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a disappearance under circumstances which excite and at the same time baffle, wonder or arouse curiosity."

The clause in question has not been judicially interpreted in Pennsylvania,[1] but defendant concedes that this portion of the charge comports with the decisions of those courts which have dealt with the question: *Davis v. St. Paul Mercury Indemnity Co.,* 227 N. C. 80, 40 S. E. 2d 609;[2] *Caldwell v. St. Paul Mercury Indemnity Co.,* 210 Miss. 320, 49 So. 2d 570. It is in accord also with Pennsylvania's theory of the probative value of so-called presumptions.

A presumption is an inference as to the existence of a fact not known, arising from its logical connec-

---

[1] *Erskine v. Glens Falls Indemnity Co.,* 76 D. & C. 172, dealt with the provision in the policy, "except[ing] a precious or semiprecious stone from its setting in any watch or piece of jewelry."

[2] See the extensive annotation to and editorial comments concerning the *Davis* case, 169 ALR 235.

tion or association with other facts which are known or proved. *Sears's Estate*, 313 Pa. 415, 169 A. 776. Logically, the mere mysterious disappearance of personal property would not justify an inference of a felonious taking. However, if parties choose to create such a presumption by their contract no policy of the law forbids it. Doubtless, it was inserted in the policy to provide more liberal terms, afford larger protection, and to obviate the necessity of proving theft by direct evidence, without however converting the policy into indemnity insurance for lost or mislaid property. Cf. *Miller v. Massachusetts Bonding & Ins. Co.*, 247 Pa. 182, 93 A. 320; *Hamill v. Fidelity & Casualty Co. of N. Y.*, 104 Pa. Superior Ct. 602, 159 A. 205; *Green v. Metro. Cas. Ins. Co. of N. Y.*, 100 Pa. Superior Ct. 274. But such a presumption is one of fact only, not a presumption of law. It creates a prima facie case for plaintiff, carrying his case to the jury upon evidence of a mysterious disappearance, even though there is no evidence of a felonious taking. From the evidence of a mysterious disappearance and the attendant circumstances the jury can find that a theft occurred; but the evidence is for the jury; and it may likewise find upon plaintiff's testimony alone, with or without countervailing evidence by defendant, that the disappearance was not due to a theft. *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 173 A. 644.

The court below awarded a new trial for this reason: "The court en banc including the trial judge, concluded that in the light of the whole charge the last paragraph of the charge over-emphasized and stressed the burden of proof of theft which rested on the plaintiffs and by so doing may have misled the jury and since this was the concluding portion of the charge it may have left a lasting impression on the jury which prejudiced the plaintiffs' case. Therefore, the trial

judge and the full court en banc 'believed justice necessitated another trial.' ".

In the concluding portion of the charge, the trial judge stated: "This being a theft policy as I have stated heretofore, this clause, this presumption of mysterious disappearance is inserted in the policy in order to obviate the difficulties on the plaintiff of proving theft under such circumstances as you have in this case, but even with such insertion in the policy, it is encumbent upon the plaintiff to sustain the burden of proving theft. Now, that clause does not cover or purport to cover property mislaid or lost. The burden of proof is on the plaintiff to prove theft by a fair preponderance of the evidence." He proceeded to define "preponderance" and ended by repeating that the plaintiff was obliged to prove theft by a preponderance of the evidence.

In the beginning of his charge he had defined "theft" thus: "Well, under the laws of this Commonwealth we call theft by the name of larceny. That is the technical name of larceny as it appears under the laws of the Commonwealth. Now, larceny has been defined by the Supreme Court as the felonious taking and carrying away of the personal goods of another, and has been defined again in different ways, but with the same meaning, the fraudulent taking and carrying away of a thing without claim of right with the intention of converting it to a use other than that of the owner, without his consent."

A trial judge can appraise far better than an appellate court the impact of his charge upon the jury.[3]

---

[3] "A trial court is a court of justice in whose conscience and sense of justice we should repose the utmost confidence and trust. A trial judge sometimes senses from the manner of testifying, or from little incidents that happen in a courtroom during the trial, things which an appellate court reading a cold bare record can-

Conceivably, the emphasis placed upon plaintiffs' duty to prove theft by a preponderance of the evidence may have drawn the attention of the jury away from the presumption. The jury might have understood that part of the charge as requiring plaintiffs to submit direct evidence of a felonious taking and therefore in its deliberations disregarded the presumption. At all events, the trial judge believes that his charge confused the jury and we cannot declare that there is no basis for his belief.

The awarding of a new trial is confided to the discretion of the court below and its exercise will be reversed only upon a demonstration of abused discretion. *Class & Nachod Brewing Co. v. Giacobello,* 277 Pa. 530, 121 A. 333. "It is only where such discretion has been exercised capriciously, arbitrarily, improvidently or has been palpably abused that we will reverse": *Beal v. Reading Co.,* 370 Pa. 45, 49, 87 A. 2d 214. Ordinarily, however, it is not sufficient for a court to state that a new trial is awarded in "the interests of justice". *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857. "A trial court, however, must give reasons for its action, otherwise an appellate court would be unable to review such action": *Beal v. Reading Co.,* supra, p. 49. So where a trial judge, after the further and maturer deliberation afforded by arguments on a motion for a new trial, with the concurrence of his associates of the court en banc, condemns his charge as inadequate or misleading, an appellate court will not be astute to discover grounds for a reversal, unless his and their judgment is utterly erroneous or perverse.

Our study of the charge has engendered the conviction that the jury could have been misled by the

---

not possibly detect": Concurring opinion of Mr. Justice BELL, *Bellettiere v. Philadelphia,* 367 Pa. 638, 645, 81 A. 2d 857.

charge and we find that the court below did not abuse its discretion in granting a new trial.

Order affirmed.