## Friel Estate

*Henry S. Miller* and *Duane, Morris & Heckscher*, for accountants.

*Smith, Aker, Grossman & Hollinger*, for claimant.

*Walter Alessandroni*, Attorney General, by *Robert Trucksess*, Special Assistant Attorney General, and *Richard N. Spare*, Special Assistant Attorney General, for Commonwealth.

TAXIS, P. J., February 7, 1966.—Sara E. Friel, surviving spouse of decedent, has filed a claim against his estate in the amount of $54,877.39. Of this amount, $39,844.75 is represented by nine checks drawn to Mrs. Friel individually and originally her property, which, however, were endorsed by her so as to be available for the use of her husband; either deposit stamps or endorsements indicate that all nine were credited to his account. The remaining $15,032.64, in the form of two additional checks, represents the purchase price of certain bonds owned by Mrs. Friel, proceeds from the sale of which were deposited in Mr. Friel's account

with the Girard Trust Company in 1958 and in 1962.

The claim was submitted to the estate by a letter dated October 7, 1964. On November 2, 1964, Mr. Speers, counsel for the estate, wrote to Mrs. Friel, requesting such information as she could furnish ". . . as to the manner in which these funds were received and disbursed and as to the general manner of conduct of the family financial affairs during your husband's lifetime". Mr. Speers then asked six specific questions concerning the merits of the claim and certain other financial transactions during decedent's lifetime which, apparently, were not thoroughly understood by the executors at that time. Counsel for Mrs. Friel, in turn, replied to this letter on November 9, 1964, giving a considerable amount of the information which Mr. Speers had sought. In addition, on November 13, 1964, a personal meeting between Mr. Speers, Mrs. Friel and her counsel was held, at which time Mrs. Friel freely answered additional questions put to her by Mr. Speers concerning the facts of her claim.

The matter came on for hearing on October 26, 1965. Subject to the objection of the estate, Mrs. Friel testified in support of her claim, and was allowed to identify 11 checks, exhibits "2" through "12", the instruments by which the funds she now seeks to recover were turned over to her husband. A stipulation of counsel was also filed, setting forth in detail: (1) the testimony which would have been given by a representative of the stockbroker through which the bonds in question were purchased; (2) what the records of the Girard Trust Bank and the Provident National Bank would indicate regarding the issuance, endorsement and deposit of the checks involved in this case; and (3) what the records of Albright and Friel, Inc., would show relating to the issuance of dividend checks to Mrs. Friel on stock of that corporation owned by her. This stipulation establishes that the funds in question

originally all were the property of claimant, and that they were turned over to decedent by her.

Two evidence questions arose at the presentation of this matter. First, counsel for claimant contends that she is competent, notwithstanding the Act of May 23, 1887, P. L. 158, 28 PS §322, the Dead Man's Act, to identify and authenticate the checks which form the basis of her claim so that they may be admitted into evidence. The second, also under the Dead Man's Act, stems from claimant's position that the correspondence between counsel for the estate and Mrs. Friel relating to the facts of the claim constitutes a waiver of that act as it would otherwise apply to Mrs. Friel.

As to claimant's first contention, she cites the basic rule that even witnesses incompetent under the act to testify to matters occurring before decedent's death are not incompetent to testify to present facts or conditions after death; and this is so even though such present facts or conditions inferentially show that similar facts or conditions existed before decedent's death. The leading case in this connection is Keating v. Nolan, 51 Pa. Superior Ct. 320. At page 323, the Superior Court said this:

". . . an interested person is competent to testify to a fact, or condition of facts, existing after the death of a deceased party in interest, notwithstanding such testimony may 'inferentially' tend to show that the same state of facts existed, or that some other connected fact existed or occurred, prior to the decedent's death. In the latest case on the subject it was declared that it is immaterial, upon the question of competency, how obvious the inference is; and necessarily this must be so if the rule is sound in principle".

Earlier in the opinion, alluding to the contention that it was improper to accomplish indirectly that which clearly could not be done directly, the court stated:

"The argument is plausible, but it involves an expansion of the statutory exception above referred to beyond its strict letter, and, in consequence, an abridgment of the remedial scope of the statute".

The "statutory exception" referred to is the Dead Man's Act, which, in the view of the appellate courts, is regarded as a deviation from the general rule of competency.

Counsel for the estate has cited Stoneroad Estate, 19 D. & C. 2d 493, and Laning's Estate, 241 Pa. 98, in support of its position that Mrs. Friel cannot identify these checks. These cases, however, deal principally with the problem of what types of records may constitute "shop books" or "business records", documents which are admissible into evidence as exceptions to the hearsay rule. The present evidence is not offered on the theory that the checks are shop books or business records, and the aforementioned cases are not convincing authority for regarding this matter as outside the rule of Keating v. Nolan, supra. As noted above, the rule is that a witness is competent unless specifically rendered incompetent by the act, and no authorities cited by the estate require me so to find in this case. These checks are not private self-serving business notations or records; they were known to decedent in his lifetime and were used by him. They are presently existing evidence of the transactions which they represent, regardless of when the transactions took place: Cf. Carr's Estate, 64 Montg. 175. As long as Mrs. Friel's testimony is limited to an identification of checks actually before her when she testifies, she is competent to speak. Accordingly, exhibits "2" through "12" and claimant's identification of them are admitted into evidence.

Claimant next contends that she may testify without restriction concerning the merits of her claim, because the estate has waived the Dead Man's Act in her

case by seeking and obtaining information concerning her claim through correspondence and personal questioning. She argues that recent cases holding that the taking of discovery depositions or interrogatories constitutes such a waiver are applicable by analogy or extension, as the action of the estate is, for all intents and purposes, the equivalent of such discovery or interrogatories. With this contention, however, I cannot agree.

In Rosche v. McCoy, 397 Pa. 615, the Supreme Court held that the admission of the deposition of a deceased defendant as substantive evidence constituted a waiver of the Dead Man's Act. In Perlis v. Kuhns, 202 Pa. Superior Ct. 80, it was held that the taking of interrogatories of a surviving party was in itself a waiver of the Dead Man's Act, whether or not the answers were used as evidence, and whether or not they disclosed anything previously unknown. This holding was adopted by the Supreme Court in Anderson v. Hughes, 417 Pa. 87. For a further and consistent application of the rule to different facts, see Hughes v. Bailey, 202 Pa. Superior Ct. 263.

The governing element in all of these cases, however, is that they involve interrogatories or depositions, both of which are compulsory legal process; such process requires an adverse party to supply information under oath and subject to the penalties for perjury. In Perlis v. Kuhns, supra, the Superior Court said, at page 84:

"The very use of depositions or interrogatories requires the adverse party to give testimony in a way sanctioned by the Pennsylvania Rules of Civil Procedure. Pa. R. C. P. 4001-4025. These rules include written interrogatories as depositions. Pa. R. C. P. 4004. This is the equivalent of placing him on the witness stand. As stated in Cox v. Gettys, supra [53 Okla. 58], and quoted by the court below: 'Any other construc-

tion of the statute would enable one party to search the conscience of his adversary, drag to light his private papers and other evidence, and then repudiate the result, if the experiment proved unsatisfactory' ".

In this case, no legal process was resorted to. The estate did nothing to place Mrs. Friel under any compulsion to furnish information. Questions were freely asked and answers supplied, and I must and do presume that both sides were acting in a genuine effort to resolve and clarify the issues connected with the claim. Indeed, in filing her claim, by her letter of October 7, 1964, Mrs. Friel did at least as much as the estate to initiate the fact finding which followed. The application and construction of the Dead Man's Act creates sufficient controversy by itself without extending its scope, in effect, so as to prevent effectively any efforts which parties might make toward the settlement of their disputes.

Claimant correctly points out that correspondence is often used as a substitute for discovery depositions and interrogatories, that the estate had the unquestioned right to use discovery, and that if Mrs. Friel is permitted to testify, the letter of November 9, 1964, could be used against her as a prior inconsistent statement, should she attempt to vary its contents in her testimony. But, true as these contentions may be, they do not change the fact that discovery was not used and the estate did not obtain evidence given under oath; hence, the reasons for the holding in Perlis v. Kuhns, supra, do not here apply. This view is not weakened by the recent lower court cases cited by claimant, for example, Raesner v. Heinsius, 113 Pitts. L. J. 427, which hold that the taking of a party's deposition even before his death constitutes a waiver of the act; for these cases also deal with the effect of compulsory process equivalent to placing the adverse party upon the witness stand. Accordingly, I hold that the estate

has not waived its right to object to the testimony of Mrs. Friel under the Dead Man's Act, and that her testimony, other than as permitted earlier herein, is inadmissible.