## Ludwig v. Aetna Casualty & Surety Co.

*Peter F. Cianci,* for plaintiffs.
*Stephen G. Welz,* for the defendant.

SAYLOR, *J.,* February 2, 1984 — This matter is before the court en banc on plaintiffs' motion to remove a compulsory nonsuit which was entered at jury trial after plaintiffs rested their case in chief.

In reviewing the correctness of the nonsuit, plaintiffs must be given the benefit of every fact and reasonable inference arising from the evidence, and all conflicts in the testimony must be resolved in their favor. McKenzie v. Cost Brothers, Inc., 487 Pa. 303, 409 A.2d 362 (1979). Viewing the evidence in this light, the facts reveal the following.

Various silverware was insured against loss under an endorsement to plaintiffs' homeowner insurance policy issued by defendant. The policy period was December 30, 1980, to December 30, 1981. The sil-

verware was insured against loss by theft, defined by the policy to include "attempted theft and loss of property from a known location when it is likely that the property has been stolen." The policy applied only to a loss during the policy period and the insured was required to file written proof of such loss within a prescribed time.

Before the policy effective date plaintiffs moved the silverware in boxes from their former residence to a new one. The boxes containing the silverware were placed under the basement stairway in the new home on December 11, 1980, and the boxes were then covered with a blanket, tires, chairs, clothing and draperies. A day or two before Christmas, 1980, the wife-plaintiff went to the stairway and removed a candelabra from one of the boxes. At that time none of the boxes were missing. Because the boxes were not disturbed, she believed that all the silverware was there and that is the last time she saw the silverware until she discovered it missing on February 8, 1981. The disappearance of the silverware is unexplained. There was no evidence of a burglary nor was there the slightest hint of fraud. The disappearance of the silverware is simply unknown. Although defendant does not dispute that the disappearance is likely the result of a theft, when and where and how it was lost remains a mystery. The sole issue at trial was when did the loss occur? The question raised by defendant's motion for involuntary nonsuit was whether plaintiffs established by a fair preponderance of the evidence the loss within the policy period. The trial court ruled that they had not, reasoning that at best plaintiffs showed possession of the silverware at the latest on December 23, 1980, and the disappearance of it on February 8, 1981. The jury would have to guess whether the loss occurred before or after the com-

mencement of the policy period on December 30, 1980.

At trial plaintiffs, opposing the nonsuit, argued (1) that they were entitled to claim the benefit of a doctrine called "presumption of continuous possession" and (2) that defendant was estopped to deny coverage.[1] At argument before this court plaintiffs abandoned the estoppel argument, continued to press the "presumption of continuous possession" theory, and raised for the first time two new contentions, namely (1) the evidence even without the presumption was sufficient to go to the jury, and (2) where the loss of property occurs before the effective date of an insurance policy covering it but the loss is unknown to either party, the policy is valid and binding.[2]

## I

The theory plaintiffs label "the continuous possession doctrine" is really the legal presumption under common law by which a condition of a continuous nature once established may be presumed to

---

1. The estoppel argument was rejected by the trial court because there must be justifiable reliance of the insured upon some act, conduct or non-action. Ordinarily an insurer has a right to rely on representations made by the insured in an application for insurance and need not investigate. See Crawford v. Manhattan Life Insurance Co. of N.Y., 113 P.L.J. 441, appeal quashed 207 Pa. Super. 161, 215 A.2d 299, affirmed 208 Pa. Super. 150, 221 A.2d 877 (1965).

2. There is some question as to whether a new theory, not present at trial, can now be asserted. See Mazza v. Berlanti Construction Co., 206 Pa. Super. 505, 214 A.2d 257 (1965). Since defendant has raised no objection and a court should enter a compulsory nonsuit only in the clearest of cases, any new light shed on the subject should be entertained.

continue until the contrary is shown. It is more commonly referred to as the continuance of existing fact or condition presumption. See Henry, Pennsylvania Evidence, Vol. 2, §652, p. 78 (4 Ed., 1953). Plaintiffs' assertion that this legal presumption applies here is without authority. No reported cases have been cited or found applying it to the existence of tangible property, such as personal property. This is understandable because the existence of tangible property is a condition which is not generally continuing in nature. The presumption is applied to the continuation of a status or condition once proved to exist, not a thing or object. The cases cited by plaintiffs illustrate this distinction and they do not support their argument. Donze v. Devlin, 329 Pa. 1 (1938), cited by plaintiffs, involved a real estate lease and the court found under the doctrine that the lease was presumed to continue until notice of termination. Hostetter v. P.U.C., 160 Pa. Super. 94 (1946), involved an application for transfer of an existing P.U.C. certificate of convenience for a motor freight carrier. The court held that proof of public necessity was not required, where it had previously been shown, absence proof to the contrary. Donsavage Estate, 420 Pa. 587, 218 A.2d 112 (1966), involved the question of whether a decedent had made an effective gift of stocks by endorsing them in blank three days before his death. The court held that a rebuttal presumption of ownership of the stock was in decedent and the person disputing that ownership must come forward with evidence to show the contrary.

As we perceive it, this doctrine of continuous condition relied upon by plaintiffs is one of any number of presumptions created by the law for the purpose of placing the burden of going forward with the evidence on the party most likely to have evidence

available on the issue. Here, plaintiffs, who have the burden of proof and who are in better position to prove the time of loss, are attempting to shift their burden by the misapplication of the doctrine to a party less able to do so, If plaintiffs do not know when and under what circumstances the silverware vanished from their home, how can defendant be expected to do so? We are satisfied that the trial court correctly refused to apply a presumption of continuous condition in this case.

## II

In support of the theory that an insurance policy is binding even though the property loss occurred before the policy's effective date so long as neither party knew about the loss, plaintiffs cite Kohne v. Insurance Co. of North America, Fed. Case No. 7.920, 1 Wash. C.C. 93 (C.C. Pa. 1804). We do not believe Kohne stands for that proposition and it is factually distinguishable in a material way. The Kohne case was an action of trover involving a marine policy insurng ship cargo. On October 12, 1799, plaintiffs ordered insurance on the cargo of a ship. The policy was filled out but before payment was made or the policy delivered, defendant learned that the cargo was lost on September 10, 1799, when the ship carrying it was captured by the British. Having learned of the loss, defendant refused to accept payment and to deliver the policy. Unlike the case at bar, the issue in Kohne was not whether the loss occurred within the policy period, but rather whether the contract was complete or inchoate before defendant discovered the loss. In our case, we have the policy and its terms are clear. In Kohne, neither the policy nor its terms are stated in the opinion, and it would appear that either the marine policy or the usage at the time covered losses occur-

ring prior to the policy date if the parties were unaware of it when the contract was completed. We reach this conclusion because it was admitted by both sides in Kohne that if the insurance agreement was perfected before the loss was discovered, plaintiffs were entitled to recover. On this point, the court in its instructions to the jury directed a verdict for plaintiff, saying:

There is no charge of unfairness on the part of the agent of the plaintiff; nor is it pretended that he knew of the loss on the 12th, when he waited upon the president of the insurance company. It appears that everything was agreed upon; and although on account of the fever then in the city, he did not wait to receive the policy; yet it was immediately after he left the office filled up and signed by the president, and has been produced on the trial. The contract therefore was not inchoate, but perfected, before notice of the capture by either of the parties.

We conclude that Kohne is of no help to plaintiffs' cause and that under the clear terms of the policy in this case coverage is afforded only for losses established to have occurred during the policy period.

## III

Finally, plaintiffs contend that, even without the benefit of the "continuous possession" presumption, they met their burden of showing that the loss occurred after the effective date of the policy. Since it was only after December 30, 1980, that they were away from home, either for a full day or overnight, they assert that the jury could make the following inferences: (1) the home was burglarized without forcible entry; (2) the silverware was stolen by a person or persons unknown; (3) plaintiffs were not home at the time; (4) a vehicle had to be used by the

culprit(s); (5) the theft required considerable time; and (6) the culprit(s) acted when plaintiffs were away for the weekend.

While it is true that a case may be made out solely upon a succession of inferences, they may not be based on conjectures or mere guesses. The test of the sufficiency of permissible inferences upon inferences in civil cases is set forth in Henderson v. National Drug Co., 343 Pa. 601, 23 A.2d 743, (1942) where the court said:

". . . when an inference of the probability of the ultimate fact must be drawn from fact whose existence is itself based on an inference or a chain of inferences . . . all prior links in the chain of inferences must be shown with the same certainty as is required in criminal cases in order to support a final inference of the probability of the ultimate fact in issue . . . *The prior inferences must be established to the exclusion of any other reasonable theory rather than merely by a probability.*" (Italics supplied in the original.) p. 607. See, also, Waldron v. Met. Life Ins. Co., 347 Pa. 257, 31 A.2d 902, (1943). Tested by this standard, plaintiffs failed to make out a case for the jury.

First, as the court said in Sigel v. American Guarantee and Liability Insurance Company, 173 Pa. Super. 434 98 A.2d 376, (1953): "Logically, the mere mysterious disappearance of personal property would not justify an inference of a felonious taking." Second, it is just as reasonable to assume that, if there was felonious taking, it occurred while the plaintiffs were either at home or when the home was open but unattended since there was no sign of forcible entry. Third, it is just as reasonable to assume that the taking was done by someone known to plaintiffs and who might possibly have access without the need to gain entry by force. Fourth, it is

just as reasonable to assume that the taking was done in series over a period of time rather than on one occasion. Certainly a fertile mind could add more assumptions to the ones just suggested. The point is: the prior assumptions offered by plaintiffs leading to the suggested assumption of the ultimate fact, namely that their home was burglarized on the weekend in January, have not been established to the exclusion of numerous other reasonable theories.

We are sympathetic to plaintiffs' loss. Unfortunately, we are at a loss to find a legal basis which would allow them a possible recovery. For the reasons stated, we are compelled to deny their motion to take off the nonsuit. Accordingly, we enter the following

## ORDER

February 2, 1984, after argument and for the reasons stated in the foregoing opinion, plaintiffs' motion to take off the compulsory nonsuit entered against them is denied.