THOMAS G. CASEY, Plaintiff, *v.* LONDON & LANCASHIRE INDEMNITY COMPANY OF AMERICA, Defendant.

City Court of Albany, December 30, 1953.

*John J. Kelly, Jr.,* for plaintiff.

*Thomas J. Delaney* for defendant.

HERZOG, J. The question at issue here arises over the interpretation of the clause now contained in most theft insurance policies, which reads: " Theft. The word ' theft ' includes larceny, burglary and robbery. Mysterious disappearance of any insured property except a precious or semi-precious stone from its setting in any watch or piece of jewelry, shall be presumed to be due to theft." The difficulty arises over the meaning of " mysterious disappearance " and the presumption created by it.

The undisputed facts, briefly, are: Plaintiff went to see a doctor for a back ailment. Since it was his first visit to this doctor, and in the prevalent belief that doctors charge according to their patients' financial ability, plaintiff removed a large diamond ring (valued at $2,000) from his finger and placed it in his trousers pocket. During the course of the doctor's treatment, plaintiff had to lower his trousers; in so doing, his cigarette case fell out of his pocket but it was recovered. After leaving the doctor's, he walked about 300 feet to a newsstand, bought a paper, read it there, and fifteen to twenty minutes later went to the rest room and there discovered that his ring was no longer in his pocket. Diligent search was made of the doctor's office (which had been straightened up after he left), of the sidewalk and street, and of the newsroom. The ring was not found. An advertisement was placed in the newspaper,

without avail. This action is brought to recover the amount of the policy, viz., $1,000.

There are so few pertinent reported decisions that it seems in order to review them at some length to determine the law which should be applied here. Diligent search by both counsel and the court reveal only two cases in New York, which consider this clause. The one is of interest but not helpful. It presents the converse of the present situation, involving an action by the insurance company to recover back the money it had paid out, when an article that had disappeared mysteriously, later reappeared. (*Continental Cas. Co.* v. *Van Deventer*, 277 App. Div. 553.) The other is a very well-considered opinion by Judge STARKE of the Municipal Court of the City of New York. (*Levine* v. *Accident & Cas. Ins. Co.*, 203 Misc. 135.) The facts of that case follow:

Plaintiff left a ring on a washstand in a theatre in New York City. He was certain it had not gone down the drain, but when he returned the next morning, it could not be located. The court first considered the meaning of " mysterious disappearance " as contrasted with lost or mislaid property. Its definition appears at page 137 of the opinion:

" The words ' mysterious disappearance ' mean a disappearance that is mysterious. The adjective ' mysterious ' modifies the noun ' disappearance '. ' Mysterious ' means unknown, unaccountable, unexplainable. Therefore, a ' mysterious ' disappearance is a *disappearance* which is unexplainable, unaccountable, or in an unknown manner. * * *

" Property is ' lost or mislaid ' if a person cannot remember where he placed the article and therefore cannot find it. In such a case, there is no mysterious disappearance. It might have been stolen, but the presumption of theft in the policy would not apply because those facts do not establish that the property has disappeared mysteriously. However, assume that a person *remembers* where he placed the article. If it is not in its place when he attempts to recover it, it has disappeared in a mysterious (unknown) manner. The disappearance or vanishment *from its place* is unknown and unexplainable." The court then goes on to consider at some length, in a very learned discussion, the effect of the presumption created by the terms of the policy, and holds that it is rebuttable. This is in accord with the weight of authority, although the dicta of a concurring Justice in *Caldwell* v. *St. Paul Mercury-Ind. Co.* (210 Miss. 320) are interesting. He said, at page 332: " Indeed, such loss is ex vi

termini theft. Nor is such a rebuttable presumption, for it is not a true legal presumption." and then goes on to say: " The fact of disappearance could be rebutted by appearance; the mystery could be dissipated by knowledge. Short of such disclosures, the terms mean the same thing." Judge STARKE then held the surrounding facts and circumstances had not rebutted the presumption that the mysterious disappearance was a theft, and he found for plaintiff.

*Davis* v. *St. Paul Mercury & Ind. Co.* (227 N. C. 80, 82, 169 A. L. R. 220), seems to be the first reported opinion. In that case, plaintiff was fishing and his boat capsized. He recovered some of the articles, which had been in the boat, but the $97 in his pocket disappeared. The trial court simply asked the jury: " Did the property of the plaintiff mysteriously disappear? " The jury found for plaintiff but the North Carolina Supreme Court held that the case should be sent back for a new trial, to determine whether there had been a theft, in accordance with the terms of the policy, and stated this question should have been submitted to the jury. The court said, at page 222 of the American Law Reports:

" This new provision, stipulating that the mysterious disappearance of insured property shall be presumed to be due to theft, was incorporated in such policies to answer the obvious objections to the old and to afford a somewhat larger measure of protection to the insured.

" This more liberal definition of theft, thus provided, creates a rule of evidence binding on the parties. Proof of the mysterious disappearance of insured property, nothing else appearing, is proof of theft. Evidence excluding the probability that the property was mislaid or lost is not required and proof of circumstances pointing to larceny as the more rational inference is not essential. It is stipulated that the inference of theft arises, as of course, upon proof of a mysterious disappearance."

It then defined " mysterious disappearance " at page 223:

" ' Disappear ' means to cease to be known, to be lost, Webster, New Int. Dic.; to cease to appear, vanish from sight, pass away, New Cent. Dic.; and ' disappearance ' means removal from sight, vanishing, Webster, New Int. Dic.; the act of disappearance, a vanishing, cessation, New Cent. Dic.

" So then a mysterious disappearance within the meaning of the policy embraces any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a dis-

appearance under circumstances which excite, and at the same time baffle, wonder or curiosity. Webster, New Int. Dic.'' and, along with the other authorities, held that the presumption was rebuttable. The annotation in this case (169 A. L. R. 257), is also of interest and follows the reasoning of the opinion.

*Caldwell* v. *St. Paul Mercury-Ind. Co. (supra)*, seems to be the next reported case. There, a setting came out of a diamond ring in plaintiff's home, between 7:00 and 9:30 in the evening. Even after extensive search, it could not be found. The next day (Thursday) a maid was instructed to look for the stone and to strain the refuse, in an attempt to find the setting. All to no avail! On Saturday the maid returned to plaintiff's home and was paid. On Monday she was told to look in a closet, which had not been searched before, following which instruction Mrs. Caldwell went to work. On her return, she ascertained the maid had disappeared (mysteriously?). She has not been seen or heard from since that day, although she was owed $2 in wages. The jury held for plaintiff; the Appellate Court affirmed, saying there were three questions involved, the first of which was: '' Was there a mysterious disappearance? '' It then went on to say that this case was stronger than the *Davis* case, but did point out, at page 330: '' Of course the policy does not cover a mere loss ''. It added that the jury could have found that the stone had been taken by the maid and considered that fact in determining whether the presumption had been rebutted (which was a question for the jury). All of this might have been dicta, since the court did say there was enough circumstantial evidence to make out a question of fact for the jury, even in the absence of the presumption.

The next reported case is *Loop* v. *United States Fidelity & Guar. Ins. Co.* (63 So. 2d 247). Plaintiff had put a ring on her finger, kept her gloves in her hand, and drove to the business section of New Orleans with her husband. After arriving there, she went to a store, next to her husband's office, and then rode with him to a friend's house. Some two and a half hours after she had left home, she discovered she had lost the ring. The court held for defendant, saying: '' There is no possible evidence of theft here, as there was no evidence that anyone had forcibly slipped the ring from her finger.'' It pointed out that she, in fact, advertised and stated to the adjuster that the ring had been lost. The court went on to say, at page 249: '' It is our opinion that, where such a clause is relied on as raising a presumption of theft, a court must take into consideration all ' the surrounding facts and circumstances ' and, from these

facts and circumstances, must reach the conclusion that there has been some possibility that there was a theft before it can apply the presumption that merely because the insured article has been lost, there has been a mysterious disappearance and consequently a theft.'' and, at page 248: '' It is quite true that such a policy provision may be relied upon wherever the facts do not themselves belie the presumption. Consequently, if the facts made it *even remotely possible* to accept with any reasonable certainty the presumption that there was a theft, it would necessarily follow that, as a result of this presumption, the so-called mysterious disappearance would justify a recovery. * * * but where there is no fact which can be pointed to as evidencing the remotest possibility of theft, we find it impossible to classify the disappearance as *mysterious* and to accept the presumption that there was a theft.'' (Italics mine.)

The latest case appears to be *Sigel* v. *American Guar. & Liability Ins. Co.* (173 Pa. Superior Ct. 434; 98 A. 2d 376). In that case, plaintiff's husband got a diamond ring and watch from a jeweler in Philadelphia, who had repaired these articles. They were wrapped separately in tissue and put in a jeweler's envelope, with the flap open. The husband put the envelope in his trousers pocket, played handball at his club, got the ring from the club's safe deposit box, showed it to his brother-in-law, ate in a restaurant, drove home, put the envelope on a bureau, without opening it; and upon examination the next morning, discovered the ring was missing but the watch was still in the envelope. There was no evidence that the house had been entered and the jury found for defendant. However, the lower court, sitting *en banc,* granted a new trial because the Trial Justice felt that his charge had stressed too strongly the fact that plaintiff must prove a theft and in so doing, had permitted the jury to overlook the presumption created by the contract. The Superior Court affirmed the granting of a new trial and said, at page 378: '' A presumption is an inference as to the existence of a fact not known, arising from its logical connection or association with other facts which are known or proved. (Citing cases.) Logically, the mere mysterious disappearance of personal property would not justify an inference of a felonious taking. However, if parties choose to create such a presumption by their contract no policy of the law forbids it. Doubtless, it was inserted in the policy to provide more liberal terms, afford larger protection, and to obviate the necessity of proving theft by direct evidence, without however converting the policy into indemnity insurance for lost or mislaid prop-

erty." The court then compared a number of cases and went on to say: "But such a presumption is one of fact only, not a presumption of law. It creates a prima facie case for plaintiff, carrying his case to the jury upon evidence of a mysterious disappearance, even though there is no evidence of a felonious taking. From the evidence of a mysterious disappearance and the attendant circumstances the jury can find that a theft occurred; but the evidence is for the jury; and it may likewise find upon plaintiff's testimony alone, with or without countervailing evidence by defendant, that the disappearance was not due to theft."

It may thus be seen, from this consideration of all the reported cases available to me, that the courts have almost universally held that the presumption created by a "mysterious disappearance" is rebuttable. The question in my mind is, where should the emphasis be placed — on the "mysterious disappearance" or the rebuttable presumption? It seems to me by holding the presumption can be rebutted by the surrounding circumstances and the evidence of plaintiff alone, the courts are, in effect, saying that actually there has been no "mysterious disappearance." One belies the other. The problem is to determine first what the parties meant by the term "mysterious disappearance" when they incorporated it in their contract. Then, if a "mysterious disappearance" is found, I think the sounder reasoning is to say it must be rebutted not by the facts and circumstances of plaintiff's own testimony (which usually is all there is), but by other convincing proof. In other words, the presumption does not arise until plaintiff has proved a "mysterious disappearance" in accordance with the terms of the policy; and then, once arisen, will not be rebutted except by proof on the part of defendant, showing that the disappearance was not "mysterious." I may be actually playing on words but this seems to me a more logical interpretation of the agreement.

Adopting this theory, I am not fully prepared to accept the definitions of "mysterious disappearance" in some of the reported cases. I think they should go one step further, and such a disappearance must be one which is not only "unexplainable, unaccountable or unknown" but one which also raises some possible inference that there has been a theft. By interpreting the agreement in this manner, we do not raise a presumption and then rebut it by the very evidence which gave rise to it. In other words, the court will not be saying there has been a "mysterious disappearance"; then, without further

evidence, that it has been rebutted. Thus, to me the better and sounder rule is to define a " mysterious disappearance " as one that cannot be explained but one that at the same time raises the inference of theft, however remote, and that when such a presumption is raised, additional evidence is necessary to rebut it. The *Loop* case (*supra*), says that the inference can be " remotely possible." This may go too far but I am adopting the reasoning of that case as the law here, in the absence of any precedent in New York which is binding upon me.

It now becomes necessary to apply this rule to the undisputed facts of this case — for me to divest myself of judicial robes and step into the jury box. Plaintiff says the most logical inference to explain the disappearance of the ring is that someone found it in the doctor's office and appropriated it, or if not, it was lost in the street and the theft committed by someone who found it and made no inquiry to ascertain the true owner. (Penal Law, § 1300.) This case seems to me to fall in a class somewhere between the cases where property has been left in a public place and disappears and the *Loop* and *Davis* cases (*supra*), where I can see no liability. I find that there was a remote possibility that a theft occurred in the doctor's office, under the circumstances here. Therefore, plaintiff may rely upon the presumption. However, the stipulated testimony of the doctor and his nurse rebut this presumption. If plaintiff lost the ring after leaving the doctor's office, in my opinion there was not even a remote possibility of theft. This case then falls in the category of lost property and the policy was never intended to cover this type of disappearance. Therefore, the only fact which gave rise to the presumption has been rebutted, and I find that the disappearance was not due to theft, so the complaint is dismissed.