94 So.2d 55 (1957)
Dr. Sidney DECKLER et al.
v.
The TRAVELERS INDEMNITY COMPANY.
No. 4367.
Court of Appeal of Louisiana, First Circuit.
March 25, 1957.
Seale, Kelton & Hayes, Morris C. Shapiro, Baton Rouge, for appellants.
Taylor, Porter, Brooks, Fuller & Phillips, Frank W. Middleton, Jr., Baton Rouge, for appellee.
ELLIS, Judge.
Dr. Sidney Deckler and Mrs. Essie Deckler, husband and wife, join in a petition seeking payment, under a theft insurance policy, for the loss of a ring under circumstances petitioners claim entitled them to recovery.
*56 The lower court dismissed the suit and this appeal was lodged.
A joint stipulation appears in this record whereby it was agreed: That the defendant was properly a party defendant; the diamond ring, the value of which is involved in this suit, has a reasonable value of $1,900 and was the property of Mrs. Deckler, its loss occurring on premises covered by the provisions of a policy issued by the defendant which was in full force and effect at the time of the loss; Mrs. Deckler last recalled seeing the ring on her finger sometime in the latter part of the evening on the date of the loss, which was first discovered by her shortly after the evening meal; she, in connection with an investigation by the defendant signed a statement, a true and correct copy of which appears herein; subsequent to the discovery of the loss a careful search of the entire house and premises was made as well as inquiries, but plaintiffs have been unable to locate the ring or unearth any information as to its whereabouts; there is no question with regard to notice given the defendant; the sole point of dispute is in regard to the construction and application of the terms of the policy, particularly as to the definition of theft contained in paragraph 1(b) under Conditions.
The policy, insofar as the portion in controversy, is concerned, reads as follows:
"(b) Theft. The word `theft' includes larceny, burglary and robbery. Mysterious disappearance of any insured property, except a precious or semiprecious stone from its setting in any watch or piece of jewelry, shall be presumed to be due to theft."
Mrs. Deckler was the only witness who testified. Her husband, the other plaintiff was, at the time of the loss, on duty in the Armed Forces, away from home. Her testimony states she last recalled seeing the ring on her hand some time during the afternoon of July 9th. Further, she related her recollection of having the ring on most of the afternoon but that she did not notice its loss "until after supper, after dinner"; that this was approximately 7:00 o'clock P. M. She was positive she had been in the house all of the time; that a maid had been there until about 5:30 P. M.; that after the maid had left she searched the house but did not find the ring. Mrs. Deckler stated she wore the ring upon her left finger and that after she had prepared the evening meal for herself and her children she cleaned up the kitchen and then discovered the loss, although she did not remember exactly where she was or what she was doing when she found the ring was gone. Her testimony goes on to show there was no one in the house except herself and her children after the maid left; that she was cleaning up after the evening meal when the garbage disposal unit failed to function properly and she tried to correct its failure but was unable to do so. According to her, the disposal unit would not grind up the refuse which was placed in it, and did not operate at all from the evening on which the loss of the ring was discovered until it was repaired several days later by some repair men whom she called to fix the unit and search for her ring; they reported to her they did not find the ring or any part of it.
The statement given by Mrs. Deckler to a representative of the defendant some six weeks after the loss was one of the subjects of stipulation, referred to supra. According to this statement she alleged she was wearing her ring on the right hand instead of the left and that she had attempted to unclog the disposal unit at approximately 7:00 P.M. on the date of the loss. The statement further relates she worked with the unit with her right hand for approximately a half an hour and managed to cause it to operate again properly; that a few hours after this occurrence she noticed the ring was missing from her right hand. Contrary to her testimony, her signed statement, given in August of 1954, related she had looked for her ring in the disposal unit but that it had not been disassembled, since she felt that if the ring had gone into it, it would have been ground up; that *57 she thought she had lost the ring from her finger while working with this unit and that it had gone on down through the garbage disposal connection to the sewer.
Regardless of any discrepancies between the signed statement and her testimony, the matter resolves itself into an interpretation of the condition in the policy, quoted above. The policy covering the insurance had here is standard and the presumption of theft as contended therein must be considered in accord with the jurisprudence.
There is only one Louisiana case involving the same issues. This is Loop v. United States Fidelity & Guaranty Co., La.App., 63 So.2d 247, 248. There an insured's wife selected a ring from several others, put it upon her hand and drove to the business section of the city in which she lived, a distance of about three miles from her residence. She carried a pair of gloves in her hand but was not wearing them, parked her car and walked a few city blocks to a store, subsequently going to her husband's office. Both returned to the car and drove to the home of some friends. The wife, wishing to show the ring to some of her friends found, for the first time, the ring was not on her finger.
As contended here the plaintiff in the Loop case claimed the facts showed a "mysterious disappearance" and that such a disappearance created the presumption of theft and the loss was therefore covered by the policy.
Part of the opinion in the Loop case reads as follows:
"But we are of the opinion that the facts do not admit of the acceptance of the presumption that the loss resulted from theft. And it is quite clear that Mrs. Loop herself was of the opinion that there had been no theft, and that she had merely lost the ring from her finger somewhere during the course of the two and a half hours which elapsed between the time at which she left her residence and the time at which she discovered the loss.
"In the first place, she says that she did not report the loss to the police or to the agent of the insurer until about three weeks after it had occurred, for the reason that `I kept hoping somebody would come back with it.' In her statement made to the insurance adjuster a day or so after she finally reported the loss, she said:
"`In summing up this matter I feel that I lost the ring and that it was not missing as a result of a theft. Because of this opinion I did not make a report of the loss to the Police Department.'
"In that statement she also said:
"`I feel reasonably certain the ring was not stolen from my home, but I can't account for the disappearance of the ring except for the possibility that it slipped off my finger.'
"There is not one word in the record which suggests that some one forcibly slipped the ring off her finger.
"If she had taken it from her finger in order to wash her hands and had placed it somewhere in the washroom and had forgotten to put it back on her finger and then returned to the washroom and found it missing, it would have been possible to classify that loss as a mysterious disappearance and to accept the presumption that there had been a theft, but where there is no fact which can be pointed to as evidencing the remotest possibility of theft, we find it impossible to classify the disappearance as mysterious and to accept the presumption that there was a theft."
Counsel for the plaintiffs in his brief maintains the correct rule of interpretation of the condition in the policy is set forth in Loop v. United States Fidelity & Guaranty Co., supra, and quotes therefrom:

*58 "It is quite true that such a policy provision may be relied upon wherever the facts do not themselves belie the presumption. Consequently, if the facts made it even remotely possible to accept with any reasonable certainty the presumption that there was a theft, it would necessarily follow that, as a result of this presumption, the so-called mysterious disappearance would justify a recovery."
An attempt is then made to distinguish the Loop case from the present one. Counsel argues there was ample opportunity for others to have taken Mrs. Deckler's ring and denies that any reliance can be placed upon her statement taken in August, some six weeks after the loss, in view of the testimony contained in the record regarding the manner and circumstances under which the statement was given.
In her oral testimony Mrs. Deckler stated the agent of the Company came to her house on August 20, 1954 and that she was under the impression he was there just to ask a few facts; that he, the agent, "said most of everything that was testified"; that she did not even bother to read the letter, just signed it; that she thought everything the agent said was going to help her. She did admit the statement was given in response to questions asked. Paragraph 2 of the statement reads: "I worked with the disposal probably one-half hour, or somewhat less, and I finally got the disposal unit to operating properly again". In answer to the correctness of this statement Mrs. Deckler admitted she had a garbage disposal unit and that it was not working; she tried to get it to work when it would start, operate a few minutes and then did not work at all. She was asked if she finally got the disposal unit to operate properly again and in answer said the statement concerning this was incorrect. She admitted she herself cleaned up the dishes after the evening meal on the date of the loss and the disposal unit was not able to grind up the garbage. As set forth hereinabove the statement placed the ring upon her right hand while her oral testimony is to the effect she always wore the ring upon her left hand; that she did not "see how it could have been on my right hand at the time."
The statement recites that at the time of the loss Mrs. Deckler was alone in the house except for her children, and she expressed the opinion therein she had lost the ring while working on the disposal unit and that it "went down the garbage disposal." Mrs. Deckler admitted signing the statement and initialing the pages preceding her signature.
It is maintained there was ample opportunity for others to have taken the ring and consequently the presumption of theft should apply.
Both counsel cite the landmark case of Davis v. St. Paul Mercury & Indemnity Co., 227 N.C. 80, 40 S.E.2d 609, 169 A.L.R. 220. A reference to this case was made in the Loop case, supra, and quotations therefrom given:
"In the Davis case, the Court defined a mysterious disappearance within the meaning of the policy as (227 N.C. 80, 40 S.E.2d 611):
"`any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity. Webster, New Int. Dict.'
"`A disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity.'
"In a comment on the Davis case in 169 A.L.R., page 257, the commentator referred to that decision, saying:
"`* * * By this decision the court very soundly limited the effect of the new clause to its proper objective namely, to effect a somewhat larger measure of protection against theft to *59 the insured, and refused to change it from a theft policy to a policy covering every loss due to mysterious disappearance. In doing so the court, in the opinion of this writer, not only reached a correct legal conclusion but, at the same time, helped to preserve a provision which is extremely valuable to the insured and which, if it had obtained the construction adopted by the trial court, very probably would be discarded by the insurance companies in future contracts as unduly extending their risks.' * * *
"`The surrounding facts and circumstances, if any, which tend to show that the property was lost or mislaid or that its disappearance was not in fact due to theft are to be considered by the jury in arriving at a verdict, the burden of proof being at all times on the plaintiff.'"
The Court then went on to say:
"It is our opinion that, where such a clause is relied on as raising a presumption of theft, a court must take into consideration all `the surrounding facts and circumstances,' and, from these facts and circumstances, must reach the conclusion that there has been some possibility that there was a theft before it can apply the presumption that merely because the insured article has been lost, there has been a mysterious disappearance and consequently a theft."
Both briefs herein reviewed the jurisprudence in other jurisdictions citing, among others, Caldwell v. St. Paul Mercury & Indemnity Co., 210 Miss. 320, 49 So.2d 570; Levine v. Accident & Casualty Insurance Co., 203 Misc. 135, 112 N.Y.S.2d 397; Casey v. London & Lancashire Indemnity Co. of America, 204 Misc. 1106, 126 N.Y.S.2d 726.
The facts in these cases are very interesting. However, the decisions therein lead us to the opinion the Loop case, supra, has followed the only authority upon the subject and that the facts in the present case justify an application here of the Loop case.
We have taken into consideration all of the "surrounding facts and circumstances". The presumption of theft cannot be applied here.
The judgment is affirmed.