OMNEX GROUP, INC., Respondent, v UNITED STATES FIRE INSURANCE COMPANY, Appellant. [985 NYS2d 73]—

Judgment, Supreme Court, New York County (Ira Gammerman, J.H.O.), entered March 7, 2013, in plaintiff's favor, unanimously affirmed, with costs.

Plaintiff, a provider of money transfer services, contracted with nonparty Armored Money Services (AMS) in March 2009 for AMS to pick up money held by plaintiff's agents in various locations for delivery to its account at Wells Fargo Bank. On February 5, 6, 7, 8 and 9, 2010, AMS picked up more than $2 million from plaintiff, but, in contravention of the parties' established practice, failed to wire it into plaintiff's account by the next business day. On February 8, 2010, two officers of AMS and an affiliated company were arrested by the FBI and subsequently admitted to engaging in a practice known as "playing the float," i.e., using the continual influx of cash to cover the operating expenses of AMS and the affiliated company, repay prior obligations to other customers, and make officer loans. On February 11, 2010, the FBI seized approximately $19 million from the vaults of AMS and the affiliated company, but approximately $68 million owed to customers remained unaccounted for.

The policy issued by defendant to plaintiff provides for coverage for loss of money "outside the 'premises' in the care and custody of . . . an armored motor vehicle company resulting directly from 'theft,' disappearance or destruction." The motion court correctly found that plaintiff's loss resulted from disappearance. Although the policy does not define the term "disappearance," that term has been defined in the context of a theft policy to mean a disappearance that is not only unexplained, but also raises the inference of theft (see Casey v London & Lancashire Indem. Co. of Am., 204 Misc 1106, 1112 [Albany City Ct 1953], affd 3 Misc 2d 918 [Albany County Ct 1956], affd 5 AD2d 724 [3d Dept 1957]; see also Black's Law Dictionary 1118 [9th ed 2009], quoting 43 Am Jur 2d Insurance § 501, at 575-576 [1982]). In any event, the policy definition of theft includes "the unlawful conversion of 'covered property' to the involuntary deprivation of the rightful owners . . . and [t]o the 'illicit gain' of the perpetrators." The undisputed evidence establishes that AMS did not deposit the funds into plaintiff's account the day after picking them up, but retained them for its own purposes.

We reject defendant's argument that the loss comes under the policy exclusion for governmental seizure of property, since the theft occurred several days before the FBI's seizure of the money in the vaults, when AMS failed to deposit plaintiff's funds into its account (see *Throgs Neck Bagels v GA Ins. Co. of N.Y.*, 241 AD2d 66, 69-70 [1st Dept 1998]; *Jamaica Pub. Serv. Co. v La Interamericana Compania de Seguros Generales S.A.*, 1 AD3d 130, 130-131 [1st Dept 2003], *lv dismissed in part, denied in part* 2 NY3d 819 [2004]; *Home Ins. Co. v American Ins. Co.*, 147 AD2d 353, 354-355 [1st Dept 1989]). Concur—Gonzalez, P.J., Mazzarelli, Sweeny, Manzanet-Daniels and Clark, JJ.