63 So.2d 247 (1953)
LOOP
v.
UNITED STATES FIDELITY & GUARANTY INS. CO.
No. 20014.
Court of Appeal of Louisiana, Orleans.
February 23, 1953.
Jones, Walker & Waechter and George Denegre, New Orleans, for plaintiff-appellant.
Weiss & Weiss and Harold Marx, Jr., New Orleans, for defendant-appellee.
JANVIER, Judge.
Plaintiff, having obtained from defendant insurance company a policy of theft insurance, seeks recovery for the purchase price of a ring which he had given to his wife and which disappeared under circumstances which plaintiff contends entitled him to recover under the policy.
From a judgment dismissing this suit he has appealed.
The facts are not in dispute. The policy which was issued to plaintiff by defendant company provided for coverage against theft from the premises or a depository and theft away from the premises, and it contained, among other definitions, the provision that:
"The word `theft' includes larceny, burglary and robbery. Mysterious disappearance of any insured property, * * * shall be presumed to be due to theft."
The ring had been purchased from a local jeweler about two months before its disappearance, and there is no dispute as to the amount of the purchase price.
On the day on which it disappeared, Mrs. Loop, the wife of plaintiff, selected this ring from several others at her home and put it on the ring finger of her right hand, and, with her husband, drove to the business *248 section of New Orleans, which was about three miles from her residence. She carried in her hands a pair of gloves but did not put them on. They parked the car at a garage in the business district and Mrs. Loop walked a few city blocks to a store on Canal Street, and after a short time there, she walked to her husband's office in the Cotton Exchange Building. They then went to the garage and got the car and drove to the residence of friends in the upper part of the City of New Orleans. When they arrived there Mrs. Loop, being proud of the ring, wished to show it to her friend, and then, for the first time, discovered that it was not on her finger.
Plaintiff contends that these facts show a "mysterious disappearance"; that a mysterious disappearance creates a presumption of theft; that there is no evidence which rebuts the presumption, and that therefore it must be held that the loss resulted from theft, and that as a consequence, there must be a recovery on the policy sued on.
It is quite true that such a policy provision may be relied upon wherever the facts do not themselves belie the presumption. Consequently, if the facts made it even remotely possible to accept with any reasonable certainty the presumption that there was a theft, it would necessarily follow that, as a result of this presumption, the so-called mysterious disappearance would justify a recovery.
But we are of the opinion that the facts do not admit of the acceptance of the presumption that the loss resulted from theft. And it is quite clear that Mrs. Loop herself was of the opinion that there had been no theft, and that she had merely lost the ring from her finger somewhere during the course of the two and a half hours which elapsed between the time at which she left her residence and the time at which she discovered the loss.
In the first place, she says that she did not report the loss to the police or to the agent of the insurer until about three weeks after it had occurred, for the reason that "I kept hoping somebody would come back with it." In her statement made to the insurance adjuster a day or so after she finally reported the loss, she said:
"In summing up this matter I feel that I lost the ring and that it was not missing as a result of a theft. Because of this opinion I did not make a report of the loss to the Police Department."
In that statement she also said:
"I feel reasonably certain the ring was not stolen from my home, but I can't account for the disappearance of the ring except for the possibility that it slipped off my finger."
There is not one word in the record which suggests that some one forcibly slipped the ring off her finger.
If she had taken it from her finger in order to wash her hands and had placed it some where in the washroom and had forgotten to put it back on her finger and had then returned to the washroom and found it missing, it would have been possible to classify that loss as a mysterious disappearance and to accept the presumption that there had been a theft, but where there is no fact which can be pointed to as evidencing the remotest possibility of theft, we find it impossible to classify the disappearance as mysterious and to accept the presumption that there was a theft.
Counsel for both parties have directed our attention to two cases, both from other jurisdictions, in which a similar clause in a theft policy was considered. These cases are Davis v. St. Paul Mercury & Indemnity Company, 227 N.C. 80, 40 S.E.2d 609, 169 A.L.R. 220, and Caldwell v. St. Paul Mercury & Indemnity Company, 210 Miss. 320, 49 So.2d 570.
In the Davis case, the Court defined a mysterious disappearance within the meaning of the policy as [227 N.C. 80, 40 S.E. 2d 611]:
"any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a disappearance under circumstances which excite, and at the same time baffle, *249 wonder or curiosity. Webster, New Int. Dic."
"A disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity."
In a comment on the Davis case in 169 A.L.R., page 257, the commentator referred to that decision, saying:
"* * * By this decision the court very soundly limited the effect of the new clause to its proper objective namely, to effect a somewhat larger measure of protection against theft to the insured, and refused to change it from a theft policy to a policy covering every loss due to mysterious disappearance. In doing so the court, in the opinion of this writer, not only reached a correct legal conclusion but, at the same time, helped to preserve a provision which is extremely valuable to the insured and which, if it had obtained the construction adopted by the trial court, very probably would be discarded by the insurance companies in future contracts as unduly extending their risks."
In the Caldwell case it was held that even where a theft policy contains such a provision, a jury must take into consideration "speculations or surmises generated by the circumstances surrounding the mysterious disappearance. [210 Miss. 320, 49 So.2d 572]."
In the Davis case, the Court said:
"The surrounding facts and circumstances, if any, which tend to show that the property was lost or mislaid or that its disappearance was not in fact due to theft are to be considered by the jury in arriving at a verdict, the burden of proof being at all times on the plaintiff."
It is our opinion that, where such a clause is relied on as raising a presumption of theft, a court must take into consideration all "the surrounding facts and circumstances," and, from these facts and circumstances, must reach the conclusion that there has been some possibility that there was a theft before it can apply the presumption that merely because the insured article has been lost, there has been a mysterious disappearance and consequently a theft.
We feel that the evidence of Mrs. Loop herself makes it impossible to accept such a presumption, and we conclude that the ring was not lost as a result of theft. Thus we agree with the conclusion reached by the district judge that:
"* * * this ring was lost, and that the circumstances under which it was lost do not constitute `Mysterious Disappearance'. There is nothing mysterious about the manner in which the ring disappeared."
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.