139 So.2d 108 (1961)
Howard M. ENGLEHART, Plaintiff-Appellant,
v.
ASSURANCE COMPANY OF AMERICA, Defendant-Appellee.
No. 9546.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1961.
On Rehearing March 7, 1962.
*109 Goode, Shea & Dietz, Shreveport, for appellant.
Bodenheimer, Looney, Richie & Jones, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
This is an action brought by an insured against his insurer for the recovery of the insured value of a missing ring, together with statutory penalties and attorney's fees. Defendant denied coverage under the policy, and after trial on the merits the lower court sustained this position. Plaintiff has appealed from the judgment.
Howard M. Englehart, a resident of Shreveport, was the owner of a two carat diamond ring, the value of which exceeded the policy limits of $1,000. On March 16, 1960, he visited his daughter and son-in-law in Baton Rouge and that night removed the ring from his finger and placed it upon a dresser. This is the last time he recalls seeing the ring. The following morning his son-in-law drove him to the Baton Rouge Airport, from whence he made an early flight back to Shreveport, traveling in an airport limousine to his home. That same day he left the suit he had worn on the trip at a Shreveport laundry to be cleaned. The next day he discovered the ring to be missing, whereupon he searched his home, inquired at the cleaning establishment, checked at the airline office, and telephoned his daughter in Baton Rouge, all without avail. Plaintiff then reported to the police he had sent the ring to the cleaners in the watch pocket of the suit, and it had not been returned. He also notified the insurance company which sent an adjuster to investigate. Plaintiff gave this adjuster a written statement to the effect the ring was in the watch pocket of his trousers when the suit was delivered to the cleaners.
At the trial Englehart testified that he did not actually know if the ring was in the clothes when delivered to the cleaners, and had said this only because it was his usual habit, when not wearing the ring away from home, to carry it in the watch *110 pocket of his trousers. An employee of the cleaning establishment testified that if the ring had been in the suit she would have discovered it during her thorough examination made when it was brought in for cleaning.
Plaintiff's position is that the loss was due to a "mysterious disappearance" and thus was insured by a particular clause of the policy.
The pertinent policy provisions in this suit are:
"6. Insurance is hereby provided with respect to these Coverage Groups and property covered thereunder * * * The Company's limit of liability for each such Coverage Group and class of property is that stated in such Schedule, subject to all the terms of this policy having reference thereto * * *"

 "Schedule
"Cov. Group Perils Insured Against Property Covered
----------- ---------------------- ----------------
 "B Theft 1. Property on premises
 11. Property off premises"

"Division 11Theft Away From the Premises:

This Company agrees to pay for loss by theft or attempt thereat or mysterious disappearance away from the premises of personal property which is owned or used by an insured. * * *"
"This insurance does not apply:
* * * * * * * * * *
"(C) to property while in the charge of any laundry, cleaner, dyer, tailor or presser except by robbery or by theft through breaking and entering at their premises;"
The District Judge interpreted mysterious disappearance to mean circumstances which would indicate a theft and not a loss or misplacement due to forgetfulness. He relied on Loop vs. United States Fidelity & Guaranty Insurance Company, 63 So.2d 247 (Orl.App.1953), where the court held there had to be some possibility of theft based on the facts and circumstances of the case in order that there could be such a mysterious disappearance as was contemplated by the policy. The trial judge found no such facts or circumstances in the instant case and held for defendant. He also stated that had the ring been in the suit when taken to the cleaners, recovery would have been denied under the policy exclusion above quoted.
Two issues are presented: whether a mysterious disappearance as is insured against by this policy has occurred; and whether such disappearance, assuming it did occur, took place at a laundry and was thereby exempt from coverage by an express provision of the policy.
Our jurisprudence places the burden of proof on the insurer to prove a loss comes under a policy exclusion. Massachusetts Protective Ass'n, Inc. vs. Ferguson, 168 La. 271, 121 So. 863 (1929); Catchot vs. Delta Life Insurance Company, 57 So.2d 919 (Orl.App.1952); 46 C.J.S., Insurance, Sec. 1321(f). The direct, uncontradicted testimony of the employee of the cleaners who received the suit when delivered shows the ring was not in the suit at that time, and the testimony and actions of plaintiff plainly show he did not know for a fact that the ring was in the *111 trousers when delivered. Accordingly, we believe defendant insurer has not met its burden of proving the exclusion applicable here.
Plaintiff's right of recovery thus depends on this court's interpretation of the mysterious disappearance clause of the policy in question. In support of their respective positions counsel for both parties have relied on the Loop case, supra, and Deckler, et al. vs. Travelers Indemnity Company, 94 So.2d 55 (La.App. 1st Cir.1957). These cases dealt with the interpretation of policies which contained the following clause:
"The word `theft' includes larceny, burglary and robbery. Mysterious disappearance of any insured property * * * shall be presumed to be due to theft."
In the Loop case, insured's wife placed a ring on her finger at her residence, drove about three miles to the business section of New Orleans, parked at a garage, walked several blocks to shop and meet her husband, then returned to her home, and for the first time discovered the ring to be missing. Denying recovery, the court held there must be some possibility of theft before there can be a mysterious disappearance, and the facts, as related, did not amount to such a mysterious disapperance. The court stated:
"* * * if the facts made it even remotely possible to accept with any reasonable certainty the presumption that there was a theft, it would necessarily follow that, as a result of this presumption, the so-called mysterious disappearance would justify a recovery.
* * * * * *
"* * * but where there is no fact which can be pointed to as evidencing the remotest possibility of theft, we find it impossible to classify the disappearance as mysterious and to accept the presumption that there was a theft." 63 So.2d 248.
The Deckler case reaffirmed the principles of the Loop case and again denied recovery for loss of a ring, since plaintiff had not succeeded in showing there was some possibility of theft. In that case insured's wife last recalled seeing the ring on her finger during the afternoon of the date of loss. She had been in the house all that afternoon and evening, prepared the evening meal herself and cleaned the kitchen. A disposal unit failed to function properly and she repaired it. Shortly after this she noticed the ring was missing. The court concluded that considering all the surrounding facts and circumstances, a presumption of theft would not be implied.
In the only two Louisiana cases interpreting the term "mysterious disappearance", the Loop and Deckler cases, a mysterious disappearance was presumed under the terms of the policy to be due to theft and was construed by the courts to require some possibility of theft based on the facts and circumstances of the case in order for there to be a mysterious disappearance. The subject policy is not so definite but affords no basis for a different ruling, and grounds for such a holding are found not only in the two cited cases, but in the policy itself. It will be observed that the mysterious disappearance clause is found in the instant policy as a part of "Coverage Group B", and in describing the peril insured against by this Group, the Insurance Schedule on page One of the policy uses only the word "Theft". The title of a supplemental page which describes the property and perils covered by this group in more detail is: "Coverage Group BBroad Form Personal Theft Coverage." Lastly, the particular clause in question is itself entitled: "Division IITheft Away From The Premises."
For these reasons we hold that there must be some reasonable possibility of theft, based on the facts and circumstances of the case, for there to be such a "mysterious disappearance" as is insured against by the policy in question.
It is remotely possible that theft could have occurred in this case at plaintiff's *112 daughter's home, on the journey from Baton Rouge to his home in Shreveport, or at the cleaning establishment. Plaintiff himself, exonerates his daughter and her family, and the record fails to disclose the presence of any third person in this home; and even if theft or the possibility thereof had occurred at the cleaning establishment, the policy exclusion would apply. This leaves only the airplane trip from Baton Rouge and the ride in the airport limousine as furnishing any opportunity for a theft to have occurred. The only testimony in this respect, however, is the fact that some unknown person sat next to him during the airplane and automobile rides. We find this evidence insufficient to disclose any reasonable possibility of theft, and the loss of a ring under such circumstances cannot, therefore, be styled a "mysterious disappearance" under our interpretation of that term.
The judgment of the lower court is affirmed, at appellant's cost.

On Rehearing
BOLIN, Judge.
Plaintiff seeks recovery from defendant for the value of a ring which he alleges mysteriously disappeared while covered by an insurance policy issued by defendant to plaintiff. By our original decree we affirmed a ruling of the lower court that the policy in question did not cover the loss, thereby rejecting plaintiff's demands. Counsel for the claimant has made application to us for a rehearing and in connection therewith very strenuously urges that we erred in our original opinion in two main particulars, which we will briefly set forth:
First, it is contended our opinion was predicated upon the cited cases of Loop v. United States Fidelity & Guaranty Ins. Co. (Orl.App.1953), 63 So.2d 247, and Deckler v. Travelers Indemnity Company (La.App. 1 Cir., 1957), 94 So.2d 55, when it is conceded therein that the policy provisions in such cases were different from the one in the instant case. We, therefore, deem it appropriate to re-examine our original opinion in light of this complaint.
The relevant policy provision in the Loop and Deckler cases, supra, is identical and provides:
"The word `theft' includes larceny, burglary and robbery. Mysterious disappearance of any insured property, * * * shall be presumed to be due to theft." (Emphasis supplied by this court.)
Whereas the policy provision in the instant case provides:
"DIVISION II. Theft Away From the Premises:
"This company agrees to pay for loss by theft or attempt thereat or mysterious disappearance away from the premises of personal property which is owned or used by an insured. * *" (Emphasis supplied.)
Noting the differences in the above provisions, plaintiff contends the policy in the instant case insures against three specific contingencies, i. e., "theft", "attempt there-at" or "mysterious disappearance". After giving this matter serious consideration, we are convinced there is merit in plaintiff's contention and that our original decree was in error in finding otherwise. While it is true, as pointed out in our original decree, the provision relating to mysterious disappearance in the instant policy is found as a part of the broad coverage "B" relating to theft and further the particular clause is entitled: "Division II.Theft Away From the Premises", this cannot change the clear and unambiguous terms of such provision. It is obvious from the reading of the provision itself that it relates to more than theft in that it covers an "attempt thereat" as well as "mysterious disappearance". We further note, for whatever it might be worth, the policy in setting forth certain exclusions relative to the coverage group in question provides as follows:

*113 "This coverage group does not apply:
"(a) to loss by mysterious disappearance of a precious or semi-precious stone from its setting in any piece of jewelry." (Italics supplied.)
If the mysterious disappearance is intended to be merely another form of theft, then no such exclusion relating to a loss would be necessary.
We now, therefore, conclude the Deckler and Loop cases, supra, are not controlling in the instant controversy because the policy provisions therein merely specified under what conditions a mysterious disappearance would become a theft whereas here such provision simply covers a "mysterious disappearance." Under these circumstances, it now becomes our duty to define "mysterious disappearance" in its common and accepted meaning without any relation to a theft.
We have been unable to find any cases where a like policy provision has been interpreted. The Loop and Deckler cases, supra, seem to be the only Louisiana cases on the subject matter, and in both decisions the landmark case of Davis v. St. Paul Mercury & Indemnity Co., 227 N.C. 80, 40 S.E.2d 609, 169 A.L.R. 220, is cited, wherein the court was considering a clause almost identical to the one in the Loop and Deckler cases, supra, and we note the following language therein:
"What then constitutes a mysterious disappearance?
"`Disappear' means to cease to be known, to be lost, Webster, New Int. Dic.; to cease to appear, vanish from sight, pass away, New Cent. Dic.; * * * the act of disappearance, a vanishing, cessation, New Cent. Dic.
"So then a mysterious disappearance within the meaning of the policy embraces any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity. Webster, New Int. Dic." (Emphasis supplied by this Court.)
However, because the policy provision in question required the mysterious disappearance to be directly related to a theft, the court went on to find:
"But the policy is a theft policy. The hazard insured against is that of theft. It does not cover or purport to cover property mislaid or lost. Nor does it insure against any and all mysterious disappearances. It merely provides that `mysterious disappearance of any insured property shall be presumed to be due to theft.'"
As the policy provision in the instant case simply covers "mysterious disappearance", does the loss in question come within the above definition? We think it does. Certainly Mr. Englehart's ring disappeared under "unknown, puzzling and baffling circumstances which aroused wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain". Having proved such, we think he is entitled to recover under the provisions of this policy without the necessity of further showing the loss was either "possibly or probably" a theft as found in the Loop and Deckler cases, supra.
The plaintiff's second averment of error in our original opinion is aimed at our factual finding that the evidence was insufficient to disclose any reasonable possibility of the theft of the ring under the holdings of the Loop and Deckler cases, supra. Having decided the policy provision in the instant case insured against any and all mysterious disappearances, it is not necessary for us to pass on this contention.
In our original decree, we found that the insurer had failed to bear the burden of *114 proving that the disappearance of the ring had occurred when same was in the pocket of assured's trousers while being laundered which would have precluded recovery under a special exclusionary clause of the policy. We find no error in that portion of our original opinion and now re-adopt same together with the reasons therefor.
Plaintiff also contends the defendant insurance company subjected itself to penalties and attorney's fees by refusing to pay this claim after the necessary notice and proof of loss had been furnished. LSA-R.S. 22:658 authorizes the assessment of such penalties when the failure to pay is found to be "arbitrary, capricious or without probable cause". In view of the serious dispute between these parties as to the nature of the loss as well as the facts surrounding such disappearance, we do not think the refusal to pay was arbitrary or capricious and, accordingly, plaintiff's claim for penalties and attorney's fees are denied.
For the reasons stated, our original decree and the judgment of the lower court is hereby vacated and set aside and there is now judgment in favor of plaintiff, Howard M. Englehart and against defendant, Assurance Company of America, for the sum of One Thousand and No/100 ($1,000.00) Dollars, with legal interest thereon from judicial demand until paid, together with all costs of the lower court and this appeal.
Reversed and rendered.
GLADNEY, J., dissents for reasons set forth in original opinion.