## Appellate Department, Superior Court, Alameda

[Civ. A. No. 394.   July 5, 1963.]

JESSIE I. SEWARD, Plaintiff and Appellant, v. ASSUR-ANCE COMPANY OF AMERICA, Defendant and Respondent.

Smith, Parrish, Paduck & Clancy and Robert S. Juhl for Plaintiff and Appellant.

Long & Levit and John B. Hook for Defendant and Respondent.

QUAYLE, J.—Appellant sued respondent insurance company for the value of her diamond-studded lady's wrist watch which disappeared during a shopping tour. Respondent had issued her a broad form theft policy covering her personal property. After judgment against her in the trial court she brings this appeal on a settled statement of facts, which may be substantially summarized as follows:

On May 27, 1961 appellant placed the watch on her left wrist. She then proceeded on a shopping tour in her automobile. She went to several stores and made various purchases. During the course of her shopping tour she noticed that the wrist watch was missing. She retraced her steps but was unable to find it. She reported the incident to the police and she advertised in several daily papers but no information was elicited. When she bought the watch in 1949 she had a safety chain placed upon it. But the safety chain caught on things and broke. It was finally removed some time prior to the incident in question. The manufacturer of the watch

had placed a double lock on it to hold it closed around the wrist. This had always proved adequate for this purpose. It was in good mechanical condition at the time. Appellant was at no time aware of the watch coming unlocked or loose. During the shopping tour she was in several crowded stores and was carrying large bundles in her arms but she recalls no incident where she was pushed or jostled. She does not know what happened to her wrist watch, whether it was lost or stolen. She does not suspect anyone of stealing her watch.

The policy in question is a Comprehensive Dwelling Policy that includes what is designated "Coverage Group B—Broad Form Personal Theft Coverage." In part this coverage provides:

"Division II—Theft Away from the Premises. This company agrees to pay for loss by theft or attempt thereat or mysterious disappearance away from the premises of personal property which is owned or used by an insured or is owned by a residence employee thereof."

Appellant contends that her wrist watch was lost by theft or mysterious disappearance within the coverage defined in the policy. She cites *Englehart* v. *Assurance Co. of America* (La. App. 1961) 139 So.2d 108, which presents a similar policy and a somewhat similar fact situation. There seem to be no reported California cases on the subject and respondent concedes that the *Englehart* case probably states the applicable law. Respondent relies on the trial court's findings and contends that inferences can be adduced from the evidence that support the judgment.

The coverage clause in *Englehart* v. *Assurance Co. of America* (*supra*) requires the insurer "to pay for loss by theft or attempt thereat or mysterious disappearance." This language is identical to that contained in appellant's policy. Under this coverage Englehart sought recovery of the value of a ring which he removed from his finger and placed on a dresser during a visit to his daughter's home. Some hours later it was missing. He suspected no member of the family of theft. Some of his clothing had in the meantime been sent out for dry cleaning. The dry cleaner testified that the clothing had been systematically inspected on arrival at the plant and the ring was not found. This was important because the Englehart policy expressly excluded loss of property "in the charge of any laundry, cleaner, dyer, tailor or presser." We have no such issue in the case at bench. The trial court found for defendant on the ground that the possibility of

theft under these facts was remote and such a loss would not constitute a "mysterious disappearance" under the policy.

The appellate court reversed the judgment and held that the facts presented constituted a "mysterious disappearance" of Englehart's ring. It pointed out that the cases relied on in the trial court dealt with a different type of coverage. The leading case on the subject, *Davis* v. *St. Paul Mercury & Indemnity Co.* (1946) 227 N.C. 80 [40 S.E.2d 609, 169 A.L.R. 220], dealt with a policy insuring theft where "the word 'theft' includes larceny, burglary and robbery. Mysterious disappearance of any insured property shall be presumed to be due to theft." Under such language "mysterious disappearance" merely raised a presumption of theft which could be weighed with all other evidence in the case to decide the ultimate question: "Was the loss due to theft?" Where the facts indicated that theft was impossible or improbable, the loss was not covered. The language raised a rebuttable presumption and did not broaden the coverage clause to insure mysterious disappearance as such. This reasoning is discussed in 169 American Law Reports 233, and is followed in *Loop* v. *United States Fidelity & Guaranty Ins. Co.* (La. App. 1953) 63 So.2d 247; *Deckler* v. *Travelers Indemnity Co.* (La. App. 1957) 94 So.2d 55; *Caldwell* v. *St. Paul Mercury & Indemnity Co.* (1950) 210 Miss. 320 [49 So.2d 570]; *Casey* v. *London & Lancashire Indem. Co.* (1957) 5 App.Div.2d 724 [168 N.Y.S.2d 692]; *Levine* v. *Accident Casualty Ins. Co.* (N.Y. 1952) 112 N.Y.S.2d 397. Each of these cases contained coverage clauses similar to that in the *Davis* case.

The *Englehart* policy on the other hand covered "loss by theft or attempt thereat *or* mysterious disappearance" (italics added). This disjunctive use of the words changes the legal effect of the coverage. "Mysterious disappearance" no longer raises a presumption of theft which constitutes a contractual "rule of evidence binding on the parties" to the insurance contract. Here "mysterious disappearance" becomes a risk covered by the policy. Therefore it is the duty of the court to define that term and if the loss falls thereunder to allow recovery.

" 'Disappear' means to cease to be known, to be lost, Webster, New Int. Dic.; to cease to appear, vanish from sight, pass away, New Cent. Dic.; . . . the act of disappearance, a vanishing, cessation, New Cent. Dic.

"So then a mysterious disappearance within the mean-

ing of the policy embraces any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity. Webster, New Int. Dic.'' (*Englehart* v. *Assurance Co. of America, supra,* p. 113.)

Where the personal property of an insured under such a broadened theft policy disappears under ''unknown, puzzling and baffling circumstances which aroused wonder, curiosity or speculation or circumstances which are difficult to understand or explain'' it is covered under the ruling in the *Englehart* case. There is no necessity to show possibility or probability that the loss resulted from theft.

■ The propriety of applying the views expressed in *Englehart* v. *Assurance Co. of America, supra,* to the case at bench is further strengthened by the fact that the court must interpret an insurance policy in such a manner as to resolve any reasonable doubt in favor of the insured as to the extent of coverage, or whether a peril is covered or not. (*Continental Casualty Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914].)

■ Respondent contends that the facts here sufficiently support the judgment for the insurer since they lead to the reasonable inference that the loss resulted from the watch slipping off appellant's wrist either while she was driving her automobile or while she was carrying large packages during the shopping tour in question. It is claimed that such a loss could not be termed a mysterious disappearance. It is pointed out that the trial court was not mystified, baffled or puzzled by the circumstances surrounding the disappearance of the wrist watch. If this is a reasonable deduction from the facts the reviewing court is without power to substitute its deductions for those of the trial court. (*Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689]; *Florez* v. *Groom* (1959) 53 Cal.2d 347, 354 [1 Cal.Rptr. 840, 348 P.2d 200].)

But the evidence here indicated that the wrist watch with its double lock, had functioned adequately for more than 11 years. There was no evidence that the locks were defective or that the watch had slipped off appellant's wrist before. Nothing indicated that it became unfastened during her shop-

ping tour that day. It did appear that at one time a safety chain had been put on the watch but it was later removed because the double locks had proved adequate and the safety chain had proved to be a nuisance. Therefore no evidence was before the court to indicate that this loss occurred by reason of some act committed by the insured, or through negligence or through defective condition of the insured property. Neither has the respondent been able to cast any light as to the exact time or place or manner of the disappearance.

That the watch was lost during appellant's shopping tour on May 27, 1961, is certain. But *when* within the time consumed on the shopping tour, or *where* along the route taken, does not appear. To say that appellant "lost" her watch does not relieve respondent under the language of this policy. "Lost" under conditions here means no more than "disappear," which is one of the definitions of loss." (Webster New Int. Dic.)

It is difficult to conceive of a loss under more "unknown, puzzling or baffling circumstances." It certainly arouses "wonder, curiosity or speculation." To any reasonable person it is "difficult to understand or explain." Therefore it fits the definition of "mysterious disappearance" and is covered by the policy.

There is no merit to respondent's claim that the interpretation here given to the coverage clause has in effect converted a theft policy into an all-risk policy. The language has extended coverage to "mysterious disappearance" as well as theft. The definition here given is not all-inclusive. There is no coverage where the evidence accounts for the loss in terms other than theft or mysterious disappearance.

Judgment reversed and cause remanded for retrial.

Wagler, P. J., and Chamberlain, J., concurred.