Mary John HAMMONTREE,
Plaintiff-Respondent,

v.

CENTRAL MUTUAL INSURANCE COM-
PANY, a corporation, Defendant-
Appellant.

Mary John HAMMONTREE,
Plaintiff-Appellant,

v.

CENTRAL MUTUAL INSURANCE COM-
PANY, a corporation, Defendant-
Respondent.

Nos. 8361, 8362.

Springfield Court of Appeals.

Missouri.

Jan. 5, 1965.

Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for plaintiff.

Stewart, Reid & Turner, Springfield, for defendant.

STONE, Judge.

In this court-tried action at law on a "homeowners policy" issued to plaintiff, Mary John Hammontree, by defendant, Central Mutual Insurance Company, judgment was entered awarding plaintiff $300 for the "mysterious disappearance" of a necklace and diamond pendant on May 10, 1963, under circumstances hereinafter detailed, but denying plaintiff's prayer for damages and an attorney's fee on account of defendant's alleged vexatious refusal to pay the loss. V.A.M.S. § 375.420. We have consolidated defendant's appeal from the judgment for $300, here docketed as Case No. 8361, and plaintiff's appeal from denial of damages and attorney's fee, here docketed as Case No. 8362.

Defendant's policy No. H955575 (herein referred to as the policy), issued to plaintiff for a policy term of three years beginning March 15, 1961, provided coverage against various perils, including Coverage

C with respect to "unscheduled personal property" (on the described premises, i. e., at plaintiff's home address, and away from those premises while "owned, worn or used" by plaintiff) against the peril of *"Theft,* meaning any act of stealing or attempt thereat \* \* \*."

For an additional premium of $11, defendant attached to the policy an endorsement effective August 23, 1962, with the caption "EXTENDED THEFT COVERAGE" followed by two numbered paragraphs, the first of which read: *"Inclusion of Mysterious Disappearance:* So much of the description of the peril of theft under the caption 'Perils Insured Against,' in Section 1 of the form attached to this policy, as reads: 'Theft, meaning any act of stealing or attempt thereat' is amended to read: 'Theft, meaning any act of stealing or attempt thereat, or mysterious disappearance (except mysterious disappearance of a precious or semi-precious stone from its setting in any watch or piece of jewelry).' " The second numbered paragraph, not material here, deleted an exclusion in the policy and thereby extended coverage to personal property "while unattended in or on any automobile."

In the course of dressing at her home about 6 P.M. on May 10, 1963, for a dinner engagement with two friends, Mrs. Velma Askins and Mrs. Opel Hooper, plaintiff placed the necklace around her neck and fastened the "spring-ring" clasp herself by reaching behind her neck and fitting together the two rings which comprised the clasp. Although she could not see the clasp, she fastened it "in the usual manner" and followed her customary practice of pulling the necklace "a little to see for sure it [was] on there tight." She had worn the necklace much of the time after it had been given to her at Christmas 1961, and the clasp on the necklace had given no trouble and had required no repair or replacement.

With no further thought about the necklace, plaintiff and her two friends set forth in plaintiff's automobile to celebrate the birthdays of plaintiff and Mrs. Askins. They went first to The Grove, where they entered the cocktail lounge, remained "around forty-five minutes," and "had one drink." Then they drove several miles across Springfield to Shady Inn, where Mrs. Hooper thought that her husband might be having dinner; but, failing to locate him, plaintiff and her companions entered the dining room and, in due course, ordered their meal. When she happened to put her hand to her neck, plaintiff discovered that her necklace was missing. It then was 8:30 to 9:00 P.M. The loss was reported to the manager at Shady Inn, and plaintiff and her companions unsuccessfully searched for the necklace there and, after eating dinner, looked for it in plaintiff's automobile. Then they returned to The Grove, talked with the manager there, and searched in the dimly-lighted cocktail lounge and in the outside area where plaintiff's automobile had been parked. Plaintiff later searched in her home, her garage, and again in her automobile, but the necklace was not found. Her last recollection of having the necklace was when she fastened it around her neck about 6 P.M. at her home; she first missed it about 8:30 to 9:00 P.M. at Shady Inn; and she had no information or knowledge as to when or where, during the intervening period, the necklace had disappeared.

Both The Grove and Shady Inn were "crowded"—there were "just lots of people at both places." But there was no evidence that plaintiff had been shoved or jostled, or that she had danced or otherwise had come into physical contact with anyone. In a signed statement taken from plaintiff on June 5, 1963, she said that: "I did not dance with anyone and I wasn't real close to anyone. I feel that the necklace just fell off and someone picked it up." At the trial she offered the safe alternative that "it was either lost or stolen."

The trial court's judgment for plaintiff was predicated upon his holdings (a) that "mysterious disappearance" in the policy provision in suit, i. e., *"Inclusion of Mysterious Disappearance:* \* \* \* 'Theft,

meaning any act of stealing or attempt thereat, or mysterious disappearance * * *'" (hereinafter referred to as the "*inclusion-meaning*" provision), is "not a part of the definition of 'theft'" but is "a risk covered by the policy," and (b) that the disappearance of the necklace was a "mysterious disappearance" within the coverage afforded by the "*inclusion-meaning*" provision. Defendant contends that both holdings were erroneous.

*Is "mysterious disappearance" a risk covered by the policy?* The earlier cases [1] construing so-called "mysterious disappearance" clauses involved claims presented under what is referred to as the "*presumptive theft*" provision, to wit: "The word 'theft' includes larceny, burglary and robbery. Mysterious disappearance of any insured property shall be presumed to be due to theft." Davis v. St. Paul Mercury & Indemnity Co., 227 N.C. 80, 40 S.E.2d 609, 610, 169 A.L.R. 220. Under the "*presumptive theft*" provision, a showing of "mysterious disappearance" simply served to raise a rebuttable presumption of theft and created a rule of evidence binding on the parties,[2] but obviously did not broaden the coverage to include and insure "mysterious disappearance" as such. Seward v. Assurance Co. of America, 218 Cal.App.2d Supp. 895, 32 Cal.Rptr. 821, 823.

In recent years, the "*presumptive theft*" provision has given way to various revisions, namely (a) that which we refer to as the "*simple coordinate*" provision (i. e., "[t]his Company agrees to pay for loss by theft or attempt thereat or mysterious disappearance * * *") found in the policies involved in Englehart v. Assurance Co. of America, La.App., 139 So.2d 108, 110, and Seward, supra, 32 Cal.Rptr. at 822, (b) that which we refer to as the "*including*" provision (i. e., "[t]heft, including attempted theft, mysterious disappearance, larceny, burglarly (sic), robbery * * *") found in the policy involved in Midlo v. Indiana Lumbermen's Mutual Ins. Co., La.App., 160 So.2d 314, 315, and (c) the hereinbeforequoted "*inclusion-meaning*" provision found in the policies involved in the instant suit, Conlin v. Dakota Fire Ins. Co., N.D., 126 N.W.2d 421, 424, and Austin v. American Casualty Co., D.C.App., 193 A.2d 741.

Under the "*simple coordinate*" provision, "'[m]ysterious disappearance' no longer raises a presumption of theft which constitutes a contractual 'rule of evidence binding on the parties' to the insurance contract" but "becomes a risk covered by the policy" and "[t]here is no necessity to show possibility or probability that the loss resulted from theft." Seward, supra, 32 Cal. Rptr. at 823. To the same effect, see Englehart, supra, 139 So.2d at 112–113.

Under the "*including*" provision "[t]heft is * * * defined so as to include attempted theft (which is of course not in fact theft) and mysterious disappearance (which may or may not be in fact theft), etc.," and (as under the "simple coordinate" provision) "the possibility or probability of theft need not be shown * * *." Midlo, supra, 160 So.2d at 315.

In Austin, supra, 193 A.2d at 742, the District of Columbia Court of Appeals con-

1. Davis v. St. Paul Mercury & Indemnity Co., 227 N.C. 80, 40 S.E.2d 609, 610, 169 A.L.R. 220; Caldwell v. St. Paul Mercury & Indemnity Co., 210 Miss. 320, 49 So.2d 570, 571; Levine v. Accident & Cas. Ins. Co., 203 Misc. 135, 112 N.Y.S. 2d 397, 400; Casey v. London & Lancashire Indem. Co. of America, 3 Misc.2d 918, 160 N.Y.S.2d 114, 115, affirmed 5 A.D.2d 724, 168 N.Y.S.2d 692; Loop v. United States Fid. & Guar. Ins. Co., La. App., 63 So.2d 247; Deckler v. Travelers Indemnity Co., La.App., 94 So.2d 55, 56; Ruby v. Farmers Mutual Auto. Ins. Co., 274 Wis. 158, 79 N.W.2d 644, 645; Sigel v. American Guarantee & Liab. Ins. Co., 173 Pa.Super. 434, 98 A.2d 376, 377; Gordon v. Eureka Casualty Co., 187 Pa.Super. 636, 146 A.2d 379, 381.

2. Davis, supra, 40 S.E.2d at 610(1), 611(3, 5), 169 A.L.R. at 222, 223; Caldwell, supra, 49 So.2d at 572; Levine, supra, 112 N.Y.S.2d at 402 (6–8); Gordon, supra, 146 A.2d at 381–382(2, 3).

strued the *"inclusion-meaning"* provision as simply reducing "the quantum of proof necessary to establish a theft by permitting a finding of theft from proof of a mysterious disappearance under circumstances which suggest the probability of theft." But in Conlin, supra, the Supreme Court of North Dakota construed the same policy provision as requiring only proof of a "mysterious disappearance" within the widely-accepted judicial definition of those terms, i. e., "that the disappearance be under unknown, puzzling, and baffling circumstances which arouse wonder, curiosity, or speculation, or under circumstances which are difficult to understand or explain * * *." 126 N.W.2d at 425. And, as we have noted, the trial court in the instant case likewise held that recovery under the same policy provision might be had by showing a "mysterious disappearance" since that is (so the court concluded) "not a part of the definition of 'theft' " but "a risk covered by the policy."

Turning again to the language of the *"inclusion-meaning"* provision under scrutiny (i. e., *"Inclusion of Mysterious Disappearance.* * * * Theft, meaning any act of stealing or attempt thereat, or mysterious disappearance * * *"*), insertion of the comma after "thereat" suggests that the subsequent words "or mysterious disappearance" are not to be included in and as a part of the phrase "meaning any act of stealing or attempt thereat" which is definitive of "theft," but rather denote and identify "mysterious disappearance" as a separate and coordinate risk.[3] And the descriptive paragraph heading *"Inclusion of Mysterious Disappearance"* under the caption "EXTENDED THEFT COVER-

AGE" persuasively indicates an intention to *include "mysterious disappearance"* within the coverage afforded by the policy. On its face, the *"inclusion-meaning"* provision is, in language and apparent intent, conspicuously different from the *"presumptive theft"* provision but somewhat similar to the *"simple coordinate"* and *"including"* provisions which have been construed as affording coverage for "mysterious disappearance" without a showing of possibility or probability of theft.

It is a favorite and familiar principle of insurance law that, if the meaning of a policy provision is doubtful and the language thereof is fairly susceptible of different constructions, the courts must adopt the construction least favorable to the insurer and most favorable to the insured.[4] Accordingly, believing (as we do) that the *"inclusion-meaning"* provision under scrutiny is fairly susceptible of the construction accorded to it by the trial court, to wit, that the words "or mysterious disappearance" were "not a part of the definition of 'theft' " but denoted "a risk covered by the policy," we accept and approve that construction.

*Was there a "mysterious disappearance" of the necklace?* The earnest contention of defendant's counsel that the disappearance of plaintiff's necklace was not a "mysterious disappearance" is predicated upon their definition of "mysterious disappearance," to wit: " * * * the separation of an item of personal property from its owner's possession by the owner's intentional placing of it in an identified [fixed] location, followed by its disappearance under unexplained circumstances, constitutes the circumstances under which

---

3. Even if the *"inclusion-meaning"* provision were construed as including the words "mysterious disappearance" in the phrase definitive of "theft," the end result might not be different [Midlo v. Indiana Lumbermen's Mutual Ins. Co., La. App., 160 So.2d 314, 315(1)]; but, in our view of the instant case, that question need not be ruled.

4. Meyers v. Smith, Mo., 375 S.W.2d 9, 16–17(11, 12); Cain v. Robinson Lumber Co., 365 Mo. 1238, 1243, 295 S.W.2d 388, 391(3); State ex rel. Security Mut. Life Ins. Co. v. Allen, 305 Mo. 607, 616, 267 S.W. 379, 381(3); Basore v. Allstate Ins. Co., Mo.App., 374 S.W.2d 626, 629(4); Phillips Hotel Operating Co. v. Liberty Mutual Ins. Co., Mo.App., 366 S.W.2d 54, 56(1).

the disappearance is 'mysterious.' On the other hand, there is nothing mysterious about losing or mislaying property; it is a common, everyday occurrence." [5] This definition emphasizes the first of two "conditions" (i. e., that "the disappearance must be from a clearly identified location" and that "the circumstances should suggest theft as the logical explanation" of the disappearance) which, so a distinguished legal representative of the insurance industry asserts, the draftsmen of the first "mysterious disappearance" clause (i. e., the *"presumptive theft"* provision) had in mind and which the industry still believes to be essential to a "mysterious disappearance." Kelly, "Mysterious Disappearance" Defined, 28 Ins. Counsel J. 72, 76–77, 83 (1961).

It is true that, in some of the earlier cases [6] dealing with claims under the *"presumptive theft"* provision, the courts understandably held that, to constitute a "mysterious disappearance" *within the meaning and coverage of that provision,* the circumstances should permit an inference of theft, because, as appropriately pointed out in Davis, supra, 40 S.E.2d at 611, 169 A.L.R. at 223 (a case under the *"presumptive theft"* provision): "The hazard insured against is that of theft. It does not cover or purport to cover property mislaid or lost. *Nor does it insure against any and all mysterious disappearances. It merely provides that 'mysterious disappearance of any in-*

*sured property shall be presumed to be due to theft.'"* (Emphasis ours.)

However, in Davis, supra, 40 S.E.2d at 611(4), 169 A.L.R. at 223, the court defined "mysterious disappearance" as embracing "any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity." The quoted judicial definition has been approved in most of the reported "mysterious disappearance" cases, including cases under each of the several policy provisions hereinbefore noted.[7] Doubting our ability to improve upon this definition, we likewise will use it.

To those participating in or familiar with development of this particular coverage, one or both of the industry's "conditions," i. e., that "the disappearance must be from a clearly identified location" and that "the circumstances should suggest theft as the logical explanation" of the disappearance, may be implicit in "mysterious disappearance." However, the courts do not necessarily accept the construction accorded to policy terms by astute insurance specialists or perspicacious counsel but rather are concerned with the meaning which the ordinary insured of average intelligence and common understanding reasonably would give to

---

5. We doubt that the frequency of disappearances in any given factual category should be determinative as to whether those disappearances are "mysterious." For, *if* the fact that "it is a common, everyday occurrence" to lose or mislay personalty bars such disappearances from being regarded as "mysterious," disappearances by reason of theft, unfortunately also "a common, everyday occurrence," no more logically or reasonably could be regarded as "mysterious."

6. Loop, supra, 63 So.2d at 249(4); Deckler, supra, 94 So.2d at 59; Gordon, supra, 146 A.2d at 382(7); Caldwell, supra, 49 So.2d at 572, 573(5).

7. Under *"presumptive theft"* provision, Loop, supra, 63 So.2d at 248; Deckler, supra, 94 So.2d at 58; Caldwell, supra, 49 So.2d at 572; Sigel, supra, 98 A.2d at 378; Gordon, supra, 146 A.2d at 381— under *"simple coordinate"* provision, Englehardt v. Assurance Co. of America, La.App., 139 So.2d 108, 113; Seward v. Assurance Co. of America, 218 Cal.App.2d Supp. 895, 32 Cal.Rptr. 821, 823—under *"including"* provision, Midlo, supra, 160 So.2d at 315—under *"inclusion-meaning"* provision, Conlin v. Dakota Fire Ins. Co., N.D., 126 N.W.2d at 425.

the words or language under consideration.[8] Neither the above-quoted judicial definition nor the "inclusion-meaning" provision under consideration indicates that, to permit a finding of "mysterious disappearance," "the disappearance must be from a clearly identified location" or "the circumstances should suggest theft as the logical explanation" of the disappearance; and we are not persuaded that the words "mysterious disappearance" carry any such connotation to the ordinary insured of average intelligence and common understanding. If insurers desire to "condition" the meaning of "mysterious disappearance," it would be relatively easy for them so to do frankly and openly by a policy definition of those words. In the meantime, the courts have neither right nor duty to impose "conditions" under the guise of construction.

We need not review and rewinnow the facts. Suffice it to conclude at this point that we are of the considered opinion that, under the hereinbefore-quoted judicial definition of "mysterious disappearance," the instant record reasonably would have permitted, although not compelled, the finding of the trial court that the disappearance of plaintiff's necklace was a "mysterious disappearance." Accordingly, having held that "mysterious disappearance" is a risk covered by the policy in suit, and being unable to say that the judgment for plaintiff in the sum of $300 (there being no issue as to the reasonable value of the necklace) was "clearly erroneous" [V.A.M.R. Rule 73.01 (d); V.A.M.S. § 510.310(4)], it becomes our duty to affirm upon defendant's appeal docketed as our Case No. 8361.

 Plaintiff's appeal, here docketed as Case No. 8362, is from the trial court's denial of damages and attorney's fee on account of defendant's alleged vexatious refusal to pay the loss. V.A.M.S. § 375.420.

The agency, through which the policy in suit was issued, referred plaintiff's claim to the Springfield office of United Adjustment & Inspection Company; and an adjuster from that office interviewed plaintiff, took a signed statement from her (in which, as we have noted, plaintiff said that "I feel that the necklace just fell off and someone picked it up"), and forwarded that statement to defendant's home office with the adjuster's report which included the recommendation, "we feel that this is another case of lost article rather than mysterious disappearance and we feel that the claim should be denied on that basis." After defendant denied the claim, plaintiff employed counsel who wrote defendant's home office on September 9, 1963. That letter is not in evidence; but, from defendant's reply of September 18 which is before us, it appears that plaintiff's counsel had urged that Englehart v. Assurance Co. of America, La. App., 139 So.2d 108 (involving a claim under the *"simple coordinate"* provision) was controlling. In reply, defendant commented that "the facts surrounding the occurrence of the Englehart loss" were different and attached photocopies of the opinions in Casey v. London & Lancashire Indemnity Co. of America, 3 Misc.2d 918, 160 N.Y.S.2d 114, and Deckler v. Travelers Indemnity Co., La.App., 94 So.2d 55 (involving claims under the *"presumptive theft"* provision).

Plaintiff's argument here follows the line that defendant "may have had some question as to coverage when this loss was first reported," that however it "should have received some illumination when it read the Englehart, Casey and Deckler cases," that "any doubt remaining should have been swept away when cited to the Seward case [Seward v. Assurance Co. of America, 218 Cal.App.2d Supp. 895, 32 Cal.Rptr. 821]," and that "a failure to pay the loss at that

---

8. Farmer v. Railway Mail Ass'n., 227 Mo.App. 1082, 1086, 1089, 57 S.W.2d 744, 745(2), 747; Arms v. Faszholz, Mo.App., 32 S.W.2d 781, 782(4); Robinson v. Commonwealth Casualty Co., 224 Mo. App. 969, 971, 27 S.W.2d 49, 51; Cass Bank & Trust Co. v. National Indemnity Co., 8 Cir., 326 F.2d 308, 310(3); 44 C.J.S. Insurance § 294, at p. 1159. See Liberty Storage Co. v. Kansas City Term. Warehouse Co., Mo.App., 340 S.W.2d 189, 192(4, 5).

juncture can only be termed vexatious." Passing the frailty that nothing in the transcript on appeal indicates when defendant was "cited to the Seward case," it may be observed that both the Seward and Englehart cases dealt with claims presented under the *"simple coordinate"* provision and that, although we here have expressed our view that the *"inclusion-meaning"* provision in suit bears some similarity to the *"simple coordinate"* provision, we cannot join in the statement of plaintiff's counsel that the two provisions are "so similar * * * that the two may fairly be called identical."

At the time of the exchange of correspondence between plaintiff's counsel and defendant's home office in September 1963, there apparently had been no reported judicial construction of the *"inclusion-meaning"* provision; and at the time of trial on March 17, 1964, the only reported case involving that provision which was then available in the National Reporter System was Austin v. American Casualty Co., D.C.App., 193 A.2d 741, where the *"inclusion-meaning"* provision had been construed in accordance with the contention of instant defendant.

The controlling legal principles are well-settled. V.A.M.S. § 375.420 is highly penal and must be strictly construed.[9] Before the trier of the facts may consider the issue of vexatious refusal to pay, there must be evidence from which it reasonably may be found that the insurer's refusal to pay was willful and without reasonable cause as the facts would have appeared to a reasonable and prudent man prior to trial.[10] And merely because the verdict or judgment upon trial may be adverse to the insurer is no reason for inflicting the penalty.[11]

Since an insurer has the right to entertain an honest difference of opinion as to its liability,[12] it is clear that, where there is an open question of law or an issue of fact determinative of its liability, an insurer, acting in good faith, may insist upon a judicial determination of such question or issue without being penalized.[13] "It is only when it persists in its refusal to pay. * *. * after it is aware that it has no meritorious defense that it becomes subject to penalties for vexatious delay."[14] The statute never should be invoked to intimidate a good faith defense.[15]

When viewed in the light of the stated principles, certainly the instant situation

9. Loulos v. United Security Ins. Co., Mo. App., 350 S.W.2d 87, 89(2); Robinson v. Benefit Ass'n. of Railway Employees, Mo.App., 183 S.W.2d 407, 413(7); Schaeffer v. Northern Assur. Co., Mo. App., 177 S.W.2d 688, 693(14).

10. State ex rel. Continental Life Ins. Co. of Kansas City v. Allen, 303 Mo. 608, 621, 262 S.W. 43, 46; State ex rel. John Hancock Mut. Life Ins. Co. v. Hughes, Mo., 152 S.W.2d 132, 134; Patterson v. American Ins. Co. of Newark, N.J., 174 Mo.App. 37, 44, 160 S.W. 59, 62.

11. Non-Royalty Shoe Co. v. Phoenix Assur. Co., Limited, of London, England, 277 Mo. 399, 210 S.W. 37, 43(11); Aufrichtig v. Columbian Nat. Life Ins. Co., 298 Mo. 1, 249 S.W. 912, 916–917(9); Scott v. Missouri Ins. Co., Mo.App., 246 S.W.2d 349, 355(15).

12. Howard v. Aetna Life Ins. Co., 350 Mo. 17, 164 S.W.2d 360, 366(9); Ireland v. Manufacturers & Merchants Ind. Co.,

Mo.App., 298 S.W.2d 529, 534; Jones v. Farm Bureau Mutual Ins. Co., Mo.App., 284 S.W.2d 11, 15(5).

13. Rohlfing v. State Farm Fire and Casualty Co., Mo.App., 349 S.W.2d 472, 477 (5); Haase v. Business Men's Assur. Co. of America, Mo.App., 275 S.W.2d 381, 385(6); Ewing v. Dubuque Fire & Marine Ins. Co., Mo.App., 237 S.W.2d 498, 502(8).

14. State ex rel. Continental Life Ins. Co. of Kansas City v. Allen, supra, 303 Mo. at 621, 262 S.W. at 46; Rohlfing, supra, 349 S.W.2d at 477; Ireland, supra, 298 S.W.2d at 534(8).

15. Haase v. Business Men's Assur. Co. of America, supra, 275 S.W.2d at 385(5); Sanderson v. New York Life Ins. Co., 239 Mo.App. 688, 194 S.W.2d 221, 228 (18); Suburban Service Bus Co. v. National Mut. Cas. Co., 237 Mo.App. 1128, 183 S.W.2d 376, 378(3).

# 669

neither required nor justified the imposition of a penalty for vexatious refusal to pay. The conscientious trial judge pointed out that "this is a case of first impression in Missouri" and stated his belief that "defendant's denial of the claim was made in good faith." Being of like mind and approving his holding that damages and at- torney's fee for alleged vexatious refusal to pay should not be allowed, it becomes our duty to affirm upon plaintiff's appeal docketed as our Case No. 8362.

The judgment of the circuit court is, in all respects, affirmed.

RUARK, P. J., and HOGAN, J., concur.