S. LAWRENCE BRIER ET AL. *v.* MUTUAL INSURANCE COMPANY OF HARTFORD

CIRCUIT COURT     SECOND CIRCUIT
FILE No. CV 2-645-27810

Memorandum filed June 18, 1965

*Samuel H. Woltch,* of Bridgeport, for the plaintiffs.

*Robinson, Robinson & Cole,* of Hartford, for the defendant.

WISE, J. This is an action to recover on a homeowners' policy for the loss of a wristwatch. The policy issued by the defendant to the plaintiffs was evidenced by a homeowners' policy numbered H72-67-28 and was issued for the period from February 15, 1961, to February 15, 1964. The policy provided for coverage against theft from the premises and away from the premises. Under the designation "Perils Insured Against," the loss by theft is included as follows: "Theft, meaning any act of stealing or attempt thereat . . . ." After the issuance of the original policy and on a date prior to April 30, 1963, for an additional premium paid by plaintiffs, an "Extended Theft Coverage" endorsement was added to the policy which amended the meaning of theft so as to read: "Theft, meaning any act of stealing or attempt thereat, or mysterious disappearance (except mysterious disappearance of a precious or semi-precious stone from its setting in any watch or piece of jewelry)."

The plaintiff Hilda F. Brier was the only witness who testified. On direct examination she stated that she was the owner of a wristwatch and was wearing it on her wrist on April 30, 1963. There is no dispute that she was the owner of the wristwatch and that it was worth $400. On April 30, 1963, she left her home about 12:30 p.m. to attend a luncheon in Bridgeport, after which she drove the automobile she was operating to her daughter's school in Fairfield to take her daughter home. There was no one

in the car with her. While waiting in the car for her daughter to come out of school, she looked at her watch and noticed the time to be 3 o'clock. Shortly thereafter, her daughter arrived and went into the car. The plaintiff then drove directly home, parked the car in the garage and entered the house. She related that she did not get out of the car from the time she left school until she arrived home and parked the car in the garage. She went directly into the house, then to her bedroom. She changed her clothes, took off her jewelry, placed the watch in her highboy in her bedroom, and began to prepare dinner for the family. This was the last time she saw the watch. A couple of weeks later, when she was going to another luncheon and wanted to wear the watch, she found it missing from the highboy. Although a search was made of the highboy, the car, the garage, and every room in the house where the watch could have been, it was never found.

On cross-examination, she stated that on May 29, 1963, one month after she last wore her watch, she gave and signed a written statement to a representative of the defendant in which she said that the last time she remembers seeing her watch was at 3 o'clock while she was in the car outside the school waiting for her daughter and that although her usual habit was to take off her watch, change clothes and prepare dinner after she brought her daughter home from school, she did not remember whether she did this on that day.

The facts testified to on direct examination and the facts admitted on cross-examination are conflicting. The testimony of the plaintiff on direct examination on May 10, 1965, the date of trial, is inconsistent with the facts set forth in the written statement given to a representative of defendant on May 29, 1963. The court finds that the plaintiff's recollec-

tion as related to the representative on this earlier date is more reliable and is entitled to greater weight than her testimony two years later. Accordingly, the court finds the facts to be that the last time the plaintiff remembers seeing her watch was at 3 p.m. while she was wearing it on her wrist and while she was in her automobile waiting for her daughter, and that she does not remember what happened to the watch thereafter. It is admitted that the plaintiff did not report the loss of the watch to the police.

This case involves the construction and interpretation of the words "Theft, meaning any act of stealing or attempt thereat, or mysterious disappearance . . . ." The sole question is whether the loss of the wristwatch under the facts as found in the instant case falls within the meaning of "mysterious disappearance." The plaintiffs have this burden of proof. The instant case is one of first impression in this state. No Connecticut case has been cited by the parties, nor has the court found one, discussing the meaning of "mysterious disappearance" as used in the "Extended Theft Coverage" endorsement.

There is a conflict in the cases decided in other jurisdictions. The greater weight of authority holds that the addition of the words "mysterious disappearance" to a theft policy does not transform it to an "all loss" policy covering lost or mislaid articles, and it remains a theft policy. *Austin* v. *American Casualty Co.,* 193 A.2d 741 (D.C. App.). In that case, the court held (p. 742): "Our reading of the cases convinces us that the mysterious disappearance addition to the theft policy reduces the quantum of proof necessary to establish a theft by permitting a finding of theft from proof of a mysterious disappearance under circumstances which suggest the probability of theft. Thus recovery is generally allowed where the article disappears from

some place where the insured has left it, either intentionally or unintentionally. Disappearance under these circumstances suggests a probability that the article was taken by a thief. On the other hand, recovery is generally disallowed where the owner has no recollection of when he last had possession of the article and cannot say when or from what place the article disappeared. Such circumstances suggest the probability that the article was lost or mislaid rather than stolen." To the same effect, see *Davis* v. *St. Paul Mercury & Indemnity Co.*, 227 N.C. 80; *Deckler* v. *Travelers Indemnity Co.*, 94 So. 2d 55 (La. App.); *Loop* v. *United States Fidelity & Guaranty Ins. Co.*, 63 So. 2d 247 (La. App.); *Caldwell* v. *St. Paul Mercury-Indemnity Co.*, 210 Miss. 320; *Casey* v. *London & Lancashire Indemnity Co.*, 3 Misc. 2d 918, aff'd, 5 App. Div. 2d 724 (N.Y.); *Levine* v. *Accident & Casualty Ins. Co.*, 203 Misc. 135 (N.Y.); *Sigel* v. *American Guarantee & Liability Ins. Co.*, 173 Pa. Super. 434; *Gordon* v. *Eureka Casualty Co.*, 187 Pa. Super. 636; *Ruby* v. *Farmers Mutual Automobile Ins. Co.*, 274 Wis. 158.

A contrary view is held in the case of *Englehart* v. *Assurance Co. of America*, 139 So. 2d 108 (La. App.). That case goes beyond any of the other cases on the subject and holds that the policy there in issue "insured against any and all mysterious disappearance" and proof of a mysterious disappearance entitled the insured to recover without the necessity of any showing that the loss was either "possibly or probably" due to a theft. This view was rejected by *Austin* v. *American Casualty Co.*, supra, 743, wherein the court said, "We are unwilling to follow the reasoning of that case." This court is also unwilling to follow the view expressed in the *Englehart* case and accepts the reasoning of the *Austin* case. The *Englehart* case is supported by another Louisiana case, *Midlo* v. *Indiana Lumbermen's Mutual Ins. Co.*,

160 So. 2d 314 (La. App.), and by *Conlin* v. *Dakota Fire Ins. Co.,* 126 N.W.2d 421 (N.D.).

In the present case, the presence of any suspicious circumstances pointing toward theft is completely lacking, other than the mere disappearance of the wristwatch, and the improbability of a theft occurring supports an inference that a theft did not occur. The probability that the wristwatch was lost or mislaid rather than stolen is not precluded by the facts as related in the written statement to the defendant's representative which the court has found to be the facts.

The issues are found in favor of the defendant.

Accordingly, judgment may enter for the defendant.